UNITED STATES of America

v.

Carlos Ivan LLERA PLAZA, Wilfredo Martinez Acosta and Victor Rodriguez, Defendants.

No. CR.A. 98–362–10, CR.A. 98–362–11, CR.A. 98–362–12.

United States District Court, E.D. Pennsylvania.

Dec. 21, 2001.

Thomas R. Perricone, U.S. Attorney's Office, Philadelphia, PA, David H. Resnicoff, Philadelphia, PA, for U.S.

Jules Epstein, Kairys & Rudovsky, Philadelphia, PA, Jose A. Muniz, New York City, Timothy J. Sullivan, Sullivan & Sullivan, College Park, MD, for Carlos Ivan Llera-Plaza.

Michael Giampietro, Krasner & Restrepo, Philadelphia, PA, L. Felipe Restrepo, Krasner & Restrepo, Philadelphia, PA, for Wilfredo Martinez Acosta.

Gerald A. Stein, Philadelphia, PA, Philip J. Degnan, Law Offices of Philip J. Degnan, Philadelphia, PA, Bernard L. Siegel, Philadelphia, PA, for Victor Rodriguez.

## OPINION

POLLAK, District Judge.

Defendants Carlos Ivan Llera Plaza, Wilfredo Martinez Acosta, and Victor Rodriguez have been charged with various counts relating to the alleged murders of Ricky Guevara–Velez, Jorge Martinez, and Luis Garcia. Further, defendants Llera Plaza and Rodriguez have been charged with various counts relating to (a) the alleged murder of Jose Hernandez and (b) the alleged distribution of controlled substances. Pursuant to the Federal Death Penalty Act, 18 U.S.C. § 3591 *et seq.* ("the FDPA"), the government has filed Notices of Intent to Seek the Death Penalty ("NOIs") in the event that the defendants are found guilty of any of certain murder counts.[1] The defendants have filed several pretrial motions challenging the constitutionality of the FDPA on its face, and its constitutionality as applied in this case through the NOIs. In this opinion, the court will discuss the facial challenges to the statute raised in the joint defense motion captioned "Motion To Preclude a Penalty Phase Hearing and/or Imposition of the Death Penalty because the 1994 Federal Death Penalty Act is Unconstitutional."

### The Federal Death Penalty Act, 18 U.S.C. § 3591, *et seq.*

The government may invoke the FDPA by filing, as it has done in this case for each of the three defendants, a notice of intent to seek the death penalty within "a reasonable time before the trial." 18 U.S.C. § 3593(a). The filing of such a notice embodies the government's intention to seek the death sentence for a defendant found guilty of an offense punishable by death. § 3591(a)(2). The notice specifies "the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death." *Id.*

The FDPA bifurcates criminal proceedings into distinct trial and sentencing phases; a sentencing phase is required only in the event that a guilty verdict is returned at trial, or a guilty plea is entered. § 3593(b). At the sentencing phase a hearing takes place at which there is presented information supplementary to the evidence presented at trial. The information is heard by the trial jury and sentence is determined by that jury unless the defendant moves to have the sentencing phase conducted by the court alone and the government consents. § 3593(b)(3). The sentencing hearing presents an opportunity for both sides to present information "as to any matter relevant to the sentence...." § 3593(c). "The defendant may present any information relevant to a mitigating factor," and "[t]he government may present any information relevant to an aggravating factor" set forth in its § 3593(a) notice. § 3593(c). "Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials, except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." *Id.*

Several steps must be taken by the sentencer—whether a jury or the court without a jury—before it may return a sentence of death. Where the crime of which the defendant was convicted was a homicide, the sentencer must determine whether, in committing the crime, the defendant had the requisite mental state—specifically, whether the defendant, beyond a reasonable doubt,

---

**1.** Those counts are as follows: Llera Plaza—Counts 24, 26, 29, 30 and 33; Martinez Acos-ta—Counts 24, 26, 29, and 30; and Rodriguez—Counts 23, 24, 25, 29, 30, and 33.

(A) intentionally killed the victim;

(B) intentionally inflicted serious bodily injury that resulted in the death of the victim;

(C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or

(D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act....

§ 3591(a)(2). The sentencer must find the presence of the requisite mental state beyond a reasonable doubt. *Id.* If the sentencer is a jury, the finding of requisite mental state must be unanimous. *See United States v. Webster,* 162 F.3d 308, 323 (5th Cir.1998); *United States v. Nguyen,* 928 F.Supp. 1525, 1532 (D.Kan.1996). If the sentencer does not conclude that the defendant acted with the requisite mental state, it may not impose the death penalty.

Assuming the sentencer finds the requisite mental state, it must then consider information received during the sentencing hearing regarding aggravating factors alleged by the government and mitigating factors alleged by the defendant. Aggravating factors, whether statutory—i.e., listed at § 3592(c)(1)-(16) [2]—or non-statutory, must be found beyond a reasonable doubt; if the jury is the sentencer, unanimity is required to support a finding of the existence of an aggravating factor. § 3593(d). If the sentencer does not find the existence of at least one statutory aggravating factor, it may not impose the death penalty. *Id.*

By contrast with aggravating factors, mitigating factors may be "established by a preponderance of the information." § 3593(c). Furthermore, "[a] finding with respect to a mitigating factor may be made by 1 or more members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such factor established for the purposes of this section regardless of the number of jurors who concur that the factor has been established." § 3593(d).

The sentencer is then required to "consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death." § 3593(e). As noted above, if the sentencing is conducted by a jury, only aggravating factors found to exist by a unanimous jury may be considered; on the other hand, "the jury may consider a mitigating factor in its weighing process so long as one juror finds that the defendant established its existence by preponderance of the evidence." *Jones v. United States,* 527 U.S. 373, 377, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999).

The sentencer will make a recommendation as to sentencing based on the results of this weighing process. § 3593(e). If the sentencing is conducted by a jury, each juror must certify to the court that his or her share of the composite jury decision was arrived at without regard to "the race, color, religious beliefs, national origin, or sex of the defendant or any victim." § 3593(f).

**2.** The aggravating factors listed at § 3592(c) apply in situations where the defendant was charged with and found guilty of a homicide; different statutory aggravating factors for other crimes punishable by death are set forth at §§ 3592(b) and (d).

The sentence recommended by the sentencer—whether death or life imprisonment without the possibility of release or parole—is binding on the court. § 3594. On appeal from a death sentence, the court of appeals is obligated to "review the entire record in the case," § 3595(b), including "all substantive and procedural issues," § 3595(c)(1). In its disposition of the appeal, the reviewing court is subject to the following guidelines:

> Whenever the court of appeals finds that—
>
> (A) the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;
>
> (B) the admissible evidence and information adduced does not support the special finding of the existence of the required aggravating factor; or
>
> (C) the proceedings involved any other legal error requiring reversal of the sentence that was properly preserved for appeal under the rules of criminal procedure,
>
> the court shall remand the case for reconsideration under section 3593 or imposition of a sentence other than death. The court of appeals shall not reverse or vacate a sentence of death on account of any error which can be harmless, including any erroneous special finding of an aggravating factor, where the Government establishes beyond a reasonable doubt that the error was harmless.

§ 3595(c)(2). The court of appeals is required to state the reasons for its decision in writing. § 3595(c)(3).

**Defendants' Motion To Preclude a Penalty Phase Hearing and/or Imposition of the Death Penalty because the 1994 Federal Death Penalty Act is Unconstitutional**

The defendants make ten arguments in support of their contention that the FDPA is facially unconstitutional. The following captions are taken directly from their motion.

I. **"The FDPA violates the Fifth, Sixth, and Eighth Amendments because the sentencing scheme is so incomprehensible that it deprives the jury of the ability to make a reasoned and informed choice between a death and life sentence."**

■ The defendants argue "that [the Due Process Clause and the Eighth Amendment] prohibit a statutory scheme, or an instruction based thereon, which is so incomprehensible that it deprives the factfinder of the ability to make a reasoned and informed choice between a death sentence and a life sentence without possibility of parole." Def.'s Mot. at 14. The defendants contend that the FDPA is just such an "incomprehensible" statutory scheme—more specifically, that the concepts of aggravating and mitigating factors as used in capital sentencing schemes such as the FDPA are routinely misunderstood by capital jurors.

Although the defendants do not cite legal authority which expressly states the proposition that capital sentencing schemes are only constitutional if they are "comprehensible" to the sentencer, the principle involved seems axiomatic. The Supreme Court has remarked: "It is certainly not a novel proposition that discretion in the area of sentencing be exercised in an informed manner." *Gregg v. Georgia*, 428 U.S. 153, 189, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

However, there is nothing in the FDPA that can be said to raise an insuperable barrier to informed sentencing. To the extent that aggravating and mitigating fac-

tors are abstract concepts, they are capable of being rendered precise and concrete in the course of crafting instructions to the sentencing jury. The Supreme Court has recognized the importance of giving to jurors "careful instructions on the law and how to apply it before they are authorized to decide the merits of a lawsuit. It would be virtually unthinkable to follow any other course in a legal system that has traditionally operated by following prior precedents and fixed rules of law." *Gregg*, 428 U.S. at 193, 96 S.Ct. 2909; *see also Lambrix v. Singletary*, 520 U.S. 518, 530–31, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997) (holding that a jury's consideration of a facially vague aggravating factor can be cured either by limiting instruction from the court or by appellate review of the factor); *Godfrey v. Georgia*, 446 U.S. 420, 429, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) (invalidating a facially vague aggravating factor where the sentencing instructions "gave the jury no guidance concerning the meaning of any of [its] terms"); *Bradley v. Nagle*, 212 F.3d 559, 570 (11th Cir.2000) ("[I]n order to apply [a facially vague]

aggravating factor in a constitutional manner, the sentencing court must give a limiting instruction to the jury.").

Statutory aggravating factors have been crafted by Congress. Some are reasonably precise[3]; some are cast in rather general terms[4]; all are susceptible of focused delineation in carefully drawn jury instructions. With respect to non-statutory aggravating factors and mitigating factors, Congress has, in effect, delegated authorship to government counsel and defense counsel, respectively—subject, in both instances, to the oversight of the trial judge. Here again, the key to clarity, and hence to comprehensibility, lies in the jury instructions.

If the case at bar proceeds to a sentencing phase, counsel for the defendants and counsel for the government will have the opportunity to participate fully in the process of formulating the instructions which will frame the jury's deliberations. There is no reason to believe that the jury will find the collaborative handiwork of court and counsel to be incomprehensible.[5]

---

**3.** *See, e.g.,* 18 U.S.C. § 3592(c)(2) ("[T]he defendant has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than 1 year, involving the use or attempted or threatened use of a firearm...."); § 3592(c)(10) ("The defendant had previously been convicted of violating title II or III of the Comprehensive Drug Abuse Prevention and Control Act of 1970 for which a sentence of 5 or more years may be imposed....").

**4.** *See, e.g.,* 18 U.S.C. § 3592(c)(5) ("The defendant, in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to 1 or more persons in addition to the victim of the offense."); § 3592(c)(6) ("The defendant committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim.").

**5.** In arguing that the aggravating factor/mitigating factor calculus is not comprehensible, defendants have drawn the court's attention to certain empirical studies based on interviews with jurors or mock jurors. *See* Craig Haney *et al., Deciding to Take a Life: Capital Juries Sentencing Instructions*, 52 J. Soc. Issues 149 (1994); Craig Haney and Mona Lynch, *Comprehending Life and Death Matters: A Preliminary Study of California's Capital Penalty Instruction*, § 18 Law & Human Behavior 411 (1994); William J. Bowers, *The Capital Jury Project: Rationale, Design and Review of Early Findings*, 70 Ind. L.J. 1043 (1995). The defendants have cited findings of these studies which may be taken to suggest that some persons find the concepts of aggravating and mitigating factors neither immediately intuitive nor amenable to clarification through standard state jury instructions. However, the studies do not establish that the concepts of aggravating and mitigating factors as used in the FDPA bear such a degree

## II. "The FDPA violates the Eighth Amendment because it fails to constitutionally narrow the class of persons eligible for the death penalty."

■ The defendants argue that both the mental state provision of § 3591(a)—requiring the government to prove the intentionality of a killing beyond a reasonable doubt [6]—and certain of the aggravating factors of § 3592(c)—specifically, § 3592(c)(1) (felony murder) [7] and § 3592(c)(9) (substantial planning and premeditation) [8]—are constitutionally deficient in that they do not adequately narrow the class of persons eligible for a death sentence under the FDPA.

This argument proceeds from the well-established precept that a capital statute must contain provisions that narrow the class of death-eligible defendants in order to pass constitutional muster. The Eighth Amendment demands that a sentencing scheme provide "a meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not." *Furman v. Georgia,* 408 U.S. 238, 313, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); *see also Godfrey,* 446 U.S. at 428, 100 S.Ct. 1759; *Gregg,* 428 U.S. at 189, 96 S.Ct. 2909. This imperative has often been tested in the context of statutory sentencing schemes like the FDPA which employ mental state requirements and aggravating factors. It is abundantly clear that "[a] system could

have standards so vague that they would fail adequately to channel the sentencing decision patterns of juries with the result that a pattern of arbitrary and capricious sentencing like that found unconstitutional in *Furman* could occur." *Gregg,* 428 U.S. at 196 n. 46, 96 S.Ct. 2909.

■ To survive a challenge of unconstitutional vagueness, a narrowing factor must operate as an "inherent restraint on the arbitrary and capricious infliction on the death sentence." *Godfrey,* 446 U.S. at 428–429, 100 S.Ct. 1759; *see also Maynard v. Cartwright,* 486 U.S. 356, 361–62, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); *Zant v. Stephens,* 462 U.S. 862, 876–77, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) ("[A]n aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder."). As the Supreme Court noted in *Tuilaepa v. California,* 512 U.S. 967, 973, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994), "a factor is not unconstitutional if it has some 'common-sense core of meaning ... that criminal juries should be capable of understanding,' *Jurek v. Texas,* 428 U.S. 262, 279, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (White, J., concurring in judgment)."

Even if, arguably, any of the challenged provisions could be deemed facially vague, the defendants' argument would be prema-

---

of intrinsic "incomprehensibility" as to render them incapable of clarification through adequate jury instructions such as those to be crafted in the instant case, if a sentencing hearing is required. The studies are thus insufficient to support the defendants' argument.

**6.** *See supra.*

**7. Death during the commission of another crime.**—The death, or injury resulting in

death, occurred during the commission or attempted commission of, or during the immediate flight from the commission of [one of a list of enumerated felonies]. § 3592(c)(1).

**8. Substantial planning and premeditation.**— The defendant committed the offense after substantial planning and premeditation to cause the death of a person or commit an act of terrorism. § 3592(c)(9).

ture in that it is leveled in the absence of jury instructions. *See* discussion *supra.* The argument as to § 3592(c)(1) is wide of the mark for the additional reason that the government has not included felony murder as an aggravating factor in any of the NOIs.

Furthermore, it is reasonably clear that these provisions are sufficient to withstand a vagueness challenge. The mental state provision requires the sentencer to make an objective assessment regarding criminal intent, and thus serves to channel the sentencer's discretion. The two challenged aggravating factors—felony murder and substantial planning and premeditation—likewise contain inherent restraints on the sentencer's discretion. It is not the case that "[a] person of ordinary sensibility could fairly characterize almost every murder" as meeting these criteria. *Godfrey*, 446 U.S. at 428–29, 100 S.Ct. 1759. Other courts that have considered challenges similar to those raised by the defendants have confirmed the constitutionality of such narrowing factors. *See, e.g., United States v. Flores*, 63 F.3d 1342, 1374 (5th Cir.1995) (substantial planning and premeditation); *Smith v. Anderson*, 104 F.Supp.2d. 773, 846 (S.D.Ohio 2000) (felony murder); *Dennis v. Mitchell*, 68 F.Supp.2d. 863, 903 (N.D.Ohio 1999) (felony murder); *Nguyen*, 928 F.Supp. at 1539 (mental state requirement). The instant motion does not raise arguments which compel a different conclusion.

**III. "The relaxed evidentiary standard available to the government at the penalty phase renders any findings unreliable and therefore is unconstitutional."**

■ The defendants argue that the latitude afforded the government in adducing information at the sentencing hearing undermines the reliability of the sentencer's findings and thus renders its decision unconstitutional.

This argument derives from the constitutional injunction that a capital sentencing procedure calls for a heightened standard of reliability. "[B]ecause there is a qualitative difference between death and any other permissible form of punishment, 'there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.'" *Stephens,* 462 U.S. at 884–85, 103 S.Ct. 2733 (quoting *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976)).

Paradoxically, the core flaw in the defendants' argument is that relaxed evidentiary standards at the capital sentencing phase have met with Supreme Court approbation precisely because of the constitutional need for heightened reliability. The constitutional corollary to the mandate of reliability is that capital sentencing must be an individualized proceeding. "The primary concern in the Eighth Amendment context has been that the sentencing decision be based on the facts and circumstances of the defendant, his background, and his crime." *Clemons v. Mississippi,* 494 U.S. 738, 748, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990); *see also Woodson,* 428 U.S. at 304, 96 S.Ct. 2978. An individualized sentencing decision may be actively facilitated by an unfettered sentencing hearing. In *Gregg,* the Supreme Court approved of the challenged sentencing scheme, and the lack of evidentiary restrictions it placed on the presentence hearing, commenting:

We think that the Georgia court wisely has chosen not to impose unnecessary restrictions on the evidence that can be offered at such a hearing and to approve open and far-ranging argument. So long as the evidence introduced and the arguments made at the presentence hearing do not prejudice a defendant, it is preferable not to impose restrictions.

We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision.

*Gregg,* 428 U.S. at 203–204, 96 S.Ct. 2909. By freeing both prosecution and defense from the restraints of evidentiary rules at the sentencing phase, the FDPA allows for the individualized sentencing the Constitution requires.

At the same time, it should also be noted that those evidentiary restrictions that are imposed by the FDPA are adequate to ensure the reliability of sentencing decisions. As discussed above, information that may be presented at the sentencing phase is subject to important constraints: the defendant presents information relevant to mitigating factors; the government presents information relevant to those aggravating factors—statutory and non-statutory—enumerated in its § 3593(a) notice; and both sides are limited by the trial judge's authority to exclude information "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." § 3593(c). The last of these three constraints is particularly noteworthy in that it is more stringent than the analogous provision in the Federal Rules of Evidence—Rule 403. Rule 403 only authorizes the trial judge to exclude evidence if its probative value is "substantially" outweighed by its potential prejudicial impact. Fed. R. Ev. 403.

In sum, the evidentiary standards for sentencing hearings under the FDPA are constitutionally permissible and adequate to ensure a reliable and individualized sentencing decision. *See United States v. Allen,* 247 F.3d 741, 759–760 (8th Cir.2001); *United States v. Minerd,* 176 F.Supp.2d. 424, ——, 2001 WL 1463518, *7 (W.D.Pa. 2001); *United States v. Cooper,* 91 F.Supp.2d. 90, 97–98 (D.D.C.2000); *United States v. Frank,* 8 F.Supp.2d., 253 268–270 (S.D.N.Y.1998); *Nguyen,* 928 F.Supp. at 1546–47.

## IV. "The FDPA unconstitutionally authorizes the government to allege non-statutory aggravating factors."

The defendants challenge the constitutionality of the catch-all sentence which concludes § 3592(c), which reads: "The jury, or if there is no jury, the court, may consider whether any other aggravating factor for which notice has been given exists." The catch-all sentence authorizes the government to present information to the sentencer of non-statutory aggravating factors—i.e., aggravating factors that are not listed in subsections (1)-(16) of § 3592(c). The defendants' argument consists of five different points.

### A. "Non-statutory aggravating factors do not constitutionally limit and guide discretion of jury, thus permitting wholly arbitrary and capricious death sentences in violation of the Eighth and Fourteenth Amendments."

■ The premise of this argument—the Eighth Amendment requirement that the sentencer's discretion in meting out the death penalty be narrowed such that its decision is neither arbitrary nor capricious—is well accepted. *See* discussion *supra.* However, this argument shares the weakness noted with respect to the defendants' argument regarding the lack of evidentiary standards under the FDPA: because of the need for individualized information in capital sentencing decisions, the Supreme Court has expressly permitted the use of non-statutory aggravating factors. In *Stephens,* the Court observed: "[S]tatutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they

circumscribe the class of persons eligible for the death penalty. But the Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death. What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Id.*, 462 U.S. at 878–79, 103 S.Ct. 2733 (emphasis in original; footnote omitted); *see also Cooper*, 91 F.Supp.2d. at 100.

Furthermore, the FDPA does impose limits on the government in defining particular non-statutory aggravating factors.[9] As a procedural matter, the government is required to articulate in advance of trial those factors it intends to prove in the sentencing phase. § 3593(a). With regard to the substance of those factors, the government is limited to those factors which, in accordance with the Eighth Amendment jurisprudence discussed above, "genuinely narrow the class of persons eligible for the death penalty and ... reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder" and hence operate as an "inherent restraint on the arbitrary and capricious infliction on the death sentence." *Stephens*, 462 U.S. at 876–77, 103 S.Ct. 2733 (quoting *Gregg*, 428 U.S. at 195 n. 46, 96 S.Ct. 2909); *see also Tuilaepa v. California*, 512 U.S. at 972, 114 S.Ct. 2630 (noting that eligibility and selection factors are to be examined for vagueness in order to "ensure that the process is neutral and principled" and "to guard against bias or caprice in the sentencing decision"). Fi-

nally, the government is limited in its endeavors to prove non-statutory aggravating factors by the court's authority to exclude information, otherwise relevant, which the court deems likely to "creat[e] unfair prejudice." § 3593(c).

In sum, there is nothing in the catch-all sentence of § 3592(c) which runs afoul of the Constitution. *See Allen*, 247 F.3d at 757–58; *Cooper*, 91 F.Supp.2d. at 100; *Frank*, 8 F.Supp.2d. at 264–66.

**B. "Congress's delegation to the government of the power to define aggravating factors represents an impermissible delegation of legislative power in violation of the separation of powers principle and the non-delegation doctrine."**

■ Under Article I § 1 of the Constitution, the legislative power of the federal government is vested in Congress. The executive branch—of which federal prosecutors are a part—may not usurp this power by legislating of its own accord, nor may Congress delegate to the executive branch the authority to legislate. *See Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). However, legislative vesting of discretionary authority in executive officials is not *per se* improper. In *Touby v. United States*, 500 U.S. 160, 111 S.Ct. 1752, 114 L.Ed.2d 219 (1991), the Supreme Court observed: "We have long recognized that the nondelegation doctrine does not prevent Congress from seeking assistance, within proper limits, from its coordinate Branches.... So long as Congress 'lay[s] down by legislative act an intelligible prin-

---

**9.** As the instant motion represents a facial challenge to the constitutionality of the FDPA, it is sufficient for present purposes to inquire whether any portion of the statutory text or the statute's overall structure disrespects the constitutional imperatives discussed in this section. In a companion motion—addressed in a separate opinion filed today by this court—the defendants have questioned whether the imperatives have been satisfied in particular in the case at bar.

ciple to which the person or body authorized to [act] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" *Id.* at 165, 111 S.Ct. 1752 (quoting *J.W. Hampton, Jr. & Co. v. United States,* 276 U.S. 394, 409, 48 S.Ct. 348, 72 L.Ed. 624 (1928)) (other citations omitted).

In authorizing the prosecution to define non-statutory aggravating factors, § 3592(c) delegates authority to act. *See United States v. Davis,* 904 F.Supp. 554, 559 (E.D.La.1995); *United States v. Pretlow,* 779 F.Supp. 758, 766–67 (D.N.J.1991). *But see United States v. Bradley,* 880 F.Supp. 271, 284 (M.D.Pa.1994) (holding that the definition of non-statutory aggravating factors is an act of "advocacy, not legislation") (quoting *United States v. Pitera,* 795 F.Supp. 546, 560 (E.D.N.Y.1992)). But it is, within the precepts enunciated in *Touby,* a permissible delegation: prosecutors are guided by "intelligible principles" in their discretion to define non-statutory aggravating factors. *See Allen,* 247 F.3d at 758–59; *United States v. McCullah,* 76 F.3d 1087, 1106–07 (10th Cir.1996); *Davis,* 904 F.Supp. at 559; *Frank,* 8 F.Supp.2d at 266.

The prosecutorial authority to define non-statutory aggravating factors under the FDPA does not, therefore, constitute an impermissible delegation of legislative authority.

## C. "Permitting the Department of Justice to define non-statutory aggravating factors after the crime but before trial violates the ban on ex post facto laws."

■ Under the FDPA, non-statutory aggravating factors must be defined in advance of trial and submitted in the government's pre-trial notice. § 3593(a). The government is thus able to define those factors after a defendant has been indicted, and well after the crime itself has been committed. The defendants argue that this structure violates Article I, § 9, cl. 3 of the Constitution, which mandates that "[n]o Bill of Attainder or ex post facto Law shall be passed."

The constitutional prohibition against ex post facto laws was most famously explained by Justice Chase in dictum in *Calder v. Bull,* 3 U.S. 386, 3 Dall. 386, 1 L.Ed. 648 (1798). Justice Chase enumerated four types of laws encompassed by the clause: "1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender." *Id.,* 3 U.S. at 390, 3 Dall. 386; *see also Carmell v. Texas,* 529 U.S. 513, 521–525, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000). The modern Court has more succinctly explained that the ex post facto clause is only implicated by "laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *California Dept. of Corrections v. Morales,* 514 U.S. 499, 504, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) (quoting *Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990)).

Of the two categories of law described by the *Morales* Court, the FDPA fits into neither. Non-statutory aggravating factors operate in a way that could indeed be considered "retroactive," in the sense that they have been formulated subsequent to the defendant's crime. However, they neither "alter the definition" of the defendant's crime, nor do they "increase the punishment" for his or her criminal act.

Entirely separate statutory provisions define the crimes alleged, and entirely separate statutory provisions establish the possible range of punishments for those crimes. In the instant case, the activities constituting travel in interstate commerce in order to commit murder for hire, alleged in Counts 24, 25, and 26, are punishable by death or life imprisonment if death of the victim results, pursuant to 18 U.S.C. § 1958. The activities constituting murder in aid of racketeering, alleged in Counts 23, 29, 30, and 33, are punishable by death or life imprisonment, pursuant to 18 U.S.C. § 1959(a)(1).

In sum, non-statutory aggravating factors of the FDPA do not implicate the ex post facto clause. *See Allen*, 247 F.3d at 759; *Minerd*, 176 F.Supp.2d. at 433; *United States v. Spivey*, 958 F.Supp. 1523, 1534 (D.N.M.1997) (rejecting an ex post facto challenge to the non-statutory aggravating factor provision of 21 U.S.C. § 848); *cf. Nguyen*, 928 F.Supp. at 1537–1538 (relying on *Dobbert v. Florida*, 432 U.S. 282, 293–94, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) to conclude that non-statutory aggravating factors constitute "procedural changes in a capital sentencing scheme which alter the method of determining whether the death penalty is to be imposed," and as such, "do not implicate ex post facto concerns"); *accord United States v. Glover*, 43 F.Supp.2d. 1217, 1230 (D.Kan.1999); *Frank*, 8 F.Supp.2d. at 267; *United States v. McVeigh*, 944 F.Supp. 1478, 1486 (D.Colo.1996).

### D. "The use of non-statutory aggravating factors without also providing for proportionality review violates the Fifth and Eighth Amendments."

■ Proportionality review of a sentence of death by an appellate court—i.e., assessment of the sentence relative to the sentences imposed in other cases for similar crimes—has been met with approbation by the Supreme Court. Under the Georgia statute challenged in *Gregg*, that state's highest court automatically reviewed each death sentence in order to determine whether the sentence was disproportionate to other sentences meted out in similar cases. The Supreme Court noted that this state law provision "substantially eliminates the possibility that a person will be sentenced to die by the action of an aberrant jury. If a time comes when juries generally do not impose the death sentence in a certain kind of murder case, the appellate review procedures assure that no defendant convicted under such circumstances will suffer a sentence of death." *Id.*, 428 U.S. at 206, 96 S.Ct. 2909. The decision to uphold this sentencing scheme as constitutional was later summarized in *Stephens* as follows: "The [*Gregg* ] plurality's approval of Georgia's capital sentencing procedure rested primarily on two features of the scheme: that the jury was required to find at least one valid statutory aggravating circumstance and to identify it in writing, and that the state supreme court reviewed the record of every death penalty proceeding to determine whether the sentence was arbitrary or disproportionate." 462 U.S. at 876, 103 S.Ct. 2733.

Although proportionality review is plainly a valuable process, it appears that, under the Court's present jurisprudence, proportionality review is not a constitutionally mandated ingredient of an appellate regime. "There is no basis in our cases for holding that comparative proportionality review by an appellate court is required in every case in which the death penalty is imposed and the defendant requests it." *Pulley v. Harris*, 465 U.S. 37, 50–51, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). All that the Fifth and Eighth Amendments require are the safeguards of reliability that have already been discussed in this opinion. *See McCleskey v. Kemp*, 481 U.S. 279, 306, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987)

("Where the statutory procedures adequately channel the sentencer's discretion, such proportionality review is not constitutionally required."). The presence of such safeguards in the FDPA renders the statute constitutionally adequate even in the absence of proportionality review. *See Allen*, 247 F.3d at 760; *Cooper*, 91 F.Supp.2d. at 99; *Frank*, 8 F.Supp.2d. at 272–73.

It remains to be noted that, although the FDPA does expressly require that a court of appeals reviewing a federal death sentence examine its proportionality, nothing in the statutory language precludes such an inquiry.[10] Determining the proper scope of appellate review is, of course, a matter to be determined by a court of appeals, not by a district court.

E. **"Statutory inconsistencies preclude the use of non-statutory aggravators."**

▆ Section 3591(a) of the FDPA provides that a defendant who has been found guilty of a death-eligible offense

shall be sentenced to death if, after consideration of *the factors set forth in section 3592* in the course of a hearing held pursuant to section 3593, it is determined that imposition of a sentence of death is justified. . . .

§ 3591(a) (emphasis added). At the same time, § 3592(c) provides:

In determining whether a sentence of death is justified for an offense described in section 3591(a)(2), the jury, or if there is no jury, the court, shall consider each of the following aggravating factors for which notice has been given and determine which, if any, exist:

[subsections (1)-(16) then provide the list of statutory aggravating factors] The jury, or if there is no jury, the court, may consider whether *any other aggravating factor for which notice has been given* exists.

§ 3592(c) (emphasis added). Considering these two sections of the statute together, the defendants in the instant case have made the following argument:

(2) Whenever the court of appeals finds that—
(A) the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;
(B) the admissible evidence and information adduced does not support the special finding of the existence of the required aggravating factor; or
(C) the proceedings involved any other legal error requiring reversal of the sentence that was properly preserved for appeal under the rules of criminal procedure,
the court shall remand the case for reconsideration under section 3593 or imposition of a sentence other than death. The court of appeals shall not reverse or vacate a sentence of death on account of any error which can be harmless, including any erroneous special finding of an aggravating factor, where the Government establishes beyond a reasonable doubt that the error was harmless.

---

10. Appellate review under the FDPA is described in § 3595 as follows:

(b) **Review.**—The court of appeals shall review the entire record in the case, including—
(1) the evidence submitted during the trial;
(2) the information submitted during the sentencing hearing;
(3) the procedures employed in the sentencing hearing; and
(4) the special findings returned under section 3593(d).

(c) **Decision and disposition.**—
(1) The court of appeals shall address all substantive and procedural issues raised on the appeal of a sentence of death, and shall consider whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor and whether the evidence supports the special finding of the existence of an aggravating factor required to be considered under section 3592.

Section 3591 states that a defendant "shall be sentenced to death if, after consideration of the factors set forth in section 3592 ... it is determined that imposition of a sentence of death is justified...." Thus, section 3591 requires that before an aggravating factor can be considered as a basis for a death sentence, it must be "set forth in section 3592" (*i.e.*, listed, enumerated). The catch-all provision in section 3592(c), which states that "the jury ... may consider whether any other aggravating factor for which notice has been given exists," contradicts the requirement in section 3591 that aggravating factors be "set forth" in section 3592. Because section 3591 provides specific limitations on the ability of the government to seek death, it nullifies the general catch-all provision under section 3592 and prohibits the use of non-statutory aggravators.

Def.'s Mot. at 41–42.

A very similar argument was considered and rejected in *United States v. Nguyen, supra.* The court in that case reasoned as follows:

Nguyen contends that the use of non-statutory aggravating factors is not authorized by the death penalty statute, because the language authorizing the factors in 18 U.S.C. § 3592(c) contradicts language in § 3591(a). Section 3592(c) provides that the jury "may consider whether any other aggravating factor for which notice has been given exists." Section 3591(a) provides that a defendant "shall be sentenced to death[ ] if, after consideration of the factors *set forth* in section 3592..., it is determined that imposition of a sentence [of death] [11] is justified." Nguyen claims that § 3591(a) allows consideration of only those factors "set forth" in § 3592, and because non-statutory factors are not

"set forth" in § 3592, they may not be considered.

The court sees no merit in this argument. A statute should be construed, if possible, in such a way that all of its provisions can be given effect, and so that no part of the statute is rendered inoperative or superfluous. Nguyen's strained and hyper-literal reading of § 3591(a) would render large portions of § 3592 inoperative. For example, if the court accepted Nguyen's construction of § 3591(a), then this would also render inoperative the "any other" mitigating factors provision, § 3592(a)(8), a result that Nguyen would surely claim violates the Fifth and Eighth Amendments. There is nothing internally contradictory or ambiguous about a statute referring to something "set forth" in a "catch-all provision." It is a frequently employed tool of the law.

*Id.*, 928 F.Supp. at 1536 (emphasis in *Nguyen;* citations omitted).

Close scrutiny of the FDPA's text reveals that the problem of parsing §§ 3591(a) and 3592(c) is somewhat more complex than the defendants' argument—and the refutation of a cognate argument in *Nguyen*—would suggest. To understand the quoted statutory provisions, reference must be made to the entire fabric of the FDPA.

Other sections of the FDPA confirm that the phrase "the factors set forth in section 3592," as used in § 3591(a), should be interpreted to include only statutory aggravating factors. For example, elsewhere in the statute, the sentencer is directed to "return special findings identifying any *aggravating factor or factors set forth in section 3592* found to exist and any *other aggravating factor for which*

**11.** This language from the statute appears to have been omitted in the opinion.

*notice has been provided* under subsection (a) found to exist." § 3593(d) (emphasis added). In this context, it is clear that the phrase "factor or factors set forth in section 3592" refers only to statutory aggravating factors, since it is explicitly distinguished from the phrase "any other aggravating factor for which notice has been provided," referring to non-statutory aggravating factors. In addition, the FDPA also mandates that "[i]f no *aggravating factor set forth in section 3592* is found to exist, the court shall impose a sentence other than death authorized by law." § 3593(d) (emphasis added). Here again, the phrase "factor set forth in section 3592" clearly refers only to statutory aggravating factors; the FDPA is uniformly understood to preclude the sentencer from imposing the death penalty if it has not found, beyond a reasonable doubt, that at least one statutory aggravating factor exists. *See, e.g., Allen,* 247 F.3d at 758; *Cooper,* 91 F.Supp.2d. at 95.

Consistency therefore demands that in reading § 3591(a), the phrase "the factors set forth in section 3592" must be taken to comprehend only statutory aggravating factors. However, this is not to say that the defendants are correct that § 3591(a) undermines the government's authority, under the catch-all sentence of § 3592(c), to articulate and attempt to establish non-statutory aggravating factors. To reiterate, § 3591(a) authorizes the sentencer to impose the death penalty if it finds such a sentence justified "after consideration of the factors set forth in section 3592." Section 3591(a) thus affirmatively directs the sentencer to include statutory factors in its calculus; however, it does not prohibit the sentencer from including non-statutory aggravating factors as well—or, for that matter, mitigating factors. Simply because consideration of one type of factor is mandated does not mean that consideration of other types of factors is precluded.

To construe § 3591(a) so narrowly as to nullify the catch-all sentence of § 3592(c) authorizing the use of non-statutory aggravating factors would violate "the long-standing canon of statutory construction that terms in a statute should not be construed so as to render any provision of that statute meaningless or superfluous." *Beck v. Prupis,* 529 U.S. 494, 506, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000); *see also United States v. Menasche,* 348 U.S. 528, 538–539, 75 S.Ct. 513, 99 L.Ed. 615 (1955). The defendants' argument does not, therefore, present a compelling challenge to the government's authority to articulate non-statutory aggravating factors under the FDPA.

## V. "The FDPA unconstitutionally restricts the mitigating evidence that the jury may consider."

■ Under the FDPA, the sentencer is prohibited from considering the "race, color, religious beliefs, national origin, or sex of the defendant or of any victim" in its sentencing decision, either in mitigation or aggravation. § 3593(f). The defendants argue that this prohibition constitutes an impermissible restriction on information that the sentencer may consider in mitigation.

■ It is well established that "[t]o meet constitutional requirements, a death penalty statute must not preclude consideration of relevant mitigating factors." *Lockett v. Ohio,* 438 U.S. 586, 608, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *see also Penry v. Lynaugh,* 492 U.S. 302, 319, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) ("[I]t is not enough simply to allow the defendant to present mitigating evidence to the sentencer. The sentencer must also be able to consider and give effect to that evidence in imposing sentence."); *Eddings v. Oklahoma,* 455 U.S. 104, 114, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("[T]he sentencer [may

not] refuse to consider, as a matter of law, any relevant mitigating evidence."). The law on mitigating evidence rests on the Eighth Amendment mandate that capital sentencing must be an individualized endeavor. *See Penry,* 492 U.S. at 319, 109 S.Ct. 2934; *Woodson,* 428 U.S. at 304–05, 96 S.Ct. 2978.

However, there is no conflict between this line of cases and § 3593(f). The missing link in the defendants' reasoning is the equal protection of the laws which is guaranteed to individuals against the federal government through the Fifth Amendment. *Bolling v. Sharpe,* 347 U.S. 497, 499–500, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Equal protection demands the "eliminat[ion of] racial discrimination emanating from official sources." *McLaughlin v. Florida,* 379 U.S. 184, 191–92, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). "[A]ll governmental action based on race ... should be subjected to detailed judicial inquiry to ensure that the personal right to equal protection of the laws has not been infringed." *Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 227, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995).[12] As an exercise of government decision-making, criminal proceedings must be color-blind. *See Georgia v. McCollum,* 505 U.S. 42, 51–55, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); *McCleskey,* 481 U.S. at 341, 107 S.Ct. 1756 (Brennan, J., dissenting) (acknowledging "the illegitimacy of race as a consideration in capital sentencing"); *Batson v. Kentucky,* 476 U.S. 79, 84, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Indeed, in a society premised on equality, race is "totally *irrelevant* to the sentencing process." *Stephens,* 462 U.S. at 885, 103 S.Ct. 2733 (emphasis added).

And the Eighth Amendment merely guarantees that a defendant may present all *relevant* mitigating information to the sentencer. *See Lockett,* 438 U.S. at 608, 98 S.Ct. 2954.

That said, the FDPA must be construed to permit the admissibility at the sentencing hearing of all information relevant to sentencing—including information relating to whatever incidental impact race may have had on a defendant. Although § 3593(f) prevents the sentencer from considering the defendant's race, it does not preclude consideration of the manner in which a defendant's race may have affected his or her life experiences and resultant personality. The Fifth Circuit has commented: "If a defendant can show that his life has been marked by discrimination or some other set of experiences, irrespective of whether the result, in part, of his race, then that properly might be admissible as relevant mitigating background or character evidence." *Webster,* 162 F.3d at 356–57; *see also Minerd,* 176 F.Supp.2d. at 433; *Davis,* 904 F.Supp. at 563; *cf. United States v. Edelin,* 134 F.Supp.2d. 59, 69 (D.D.C.2001) (reaching the same conclusion with respect to 21 U.S.C. § 848(*o*)(1), the analogue of 18 U.S.C. § 3593(f) in the Anti–Drug Abuse Act); *accord United States v. Cuff,* 38 F.Supp.2d. 282, 287 (S.D.N.Y.1999).

The provisions of § 3593(f) of the FDPA are in accord with the precepts of equal protection, and do not conflict with the Eighth Amendment's demand for unlimited relevant mitigating evidence in capital sentencing.

---

**12.** The defendants describe themselves as "Hispanic, having been born in Puerto Rico, and as such are members of a distinct racial minority." Def.'s Mot. to Bar the Death Penalty Due to Racial Discrimination (Docket # 418) ¶ 1. It is therefore assumed that the defendants' objection to § 3593(f) is based on the premise that the statutory provision, if given effect, would operate to preclude recognition of their "race [or] color" as a mitigating factor.

**VI. "The FDPA unconstitutionally gives the government the power to compel the accused to be sentenced by a jury against his will."**

Under the FDPA, the trial jury is also the sentencer unless the defendant moves for sentencing by the trial judge and the government consents. § 3593(b)(3). The defendants in the case at bar argue that to condition access to bench sentencing on the assent of the executive branch is unconstitutional.

This issue is not ripe: trial has not yet commenced, and none of the defendants has moved, or evinced an intention to move, for bench sentencing if convicted of one of the death-eligible offenses charged.[13]

**VII. "The FDPA violates the Fifth and Eighth Amendments because it fails to provide for meaningful appellate review."**

■■■ The FDPA provides for appellate review in § 3595(a) as follows: "In a case in which a sentence of death is imposed, the sentence shall be subject to review by the court of appeals upon appeal by the defendant. Notice of appeal must be filed within the time specified for the filing of a notice of appeal."[14] The defendants argue that because § 3595(a) conditions access to appellate review on compliance with applicable time limitations, it does not constitute "meaningful" appellate review in violation of the Eighth Amendment. The defendants contend that depression and suicidal tendencies of persons convicted of capital offenses may result in failure to comply with these time limitations, and that the validity of many death sentences may therefore be impermissibly removed from appellate scrutiny.

In the case at bar, none of the defendants has yet been tried, let alone sentenced. Their challenge to the manner in which the FDPA provides for appellate review of a death sentence is therefore unripe. Moreover, it may well be the case that, if a death sentence is imposed on any defendant, that defendant's challenge to the procedure by which appellate review is to be pursued should be addressed not to this trial court but to the court of appeals.[15]

---

**13.** If the defendants' contentions were properly before the court, they would face significant obstacles. First, the holding in *Singer v. United States*, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965), sustaining the constitutionality of Federal Rule of Criminal Procedure 23(a), which conditions a defendant's waiver of jury trial on the consent of the government, suggests that the analogous limitation in § 3593(b)(3) on waiver of jury sentencing is also constitutional. *Cf. Libretti v. United States*, 516 U.S. 29, 49, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995) (no constitutional right to jury sentencing); *Thomas–Bey v. Smith*, 869 F.Supp. 1214, 1224 (D.Md.1994) ("no absolute constitutional right to a 'meaningful' choice between a sentencing jury and judge"). Second, the defendants' anticipation of a prejudiced sentencing jury—a possible scenario left unaddressed by *Singer*—is unavailing: the jury that sits in any criminal case must, of course, be impartial, *see Ross v. Oklahoma*, 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), but the FDPA does not, by its terms, interpose any impediments to impaneling an impartial jury or dismissing a partial one.

Challenges to the constitutionality of § 3593(b)(3) have been rejected by a number of federal courts. *See, e.g., Minerd*, 176 F.Supp.2d at 440; *Cooper*, 91 F.Supp.2d at 102–03; *cf. Spivey*, 958 F.Supp. at 1529 (rejecting a challenge to 21 U.S.C. § 848(i)(1)(C) which is similar to 18 U.S.C. § 3593(b)(3)).

**14.** Federal Rule of Appellate Procedure 4(b)(1)(A) allows a criminal defendant ten days to file a notice of appeal after the entry of the judgment or the order being appealed; Rule 4(b)(4) authorizes an extension of thirty days "[u]pon a finding of excusable neglect or good cause."

## VIII. "The remand provision of 18 U.S.C. § 3595(c)(2) violates the Double Jeopardy Clause."

The provision of the FDPA providing for appellate review directs the court of appeals to "remand the case for reconsideration under section 3593 or imposition of a sentence other than death," § 3595(c)(2), in the event that it finds that "the admissible evidence and information adduced does not support the special finding of the existence of the required aggravating factor," § 3595(c)(2)(B). The defendants argue that this violates the Fifth Amendment's prohibition on double jeopardy.

Once again, this argument is unripe. The defendants' trial has not yet commenced. Whether any of the defendants will be convicted of a death-eligible offense, let alone sentenced to death, is, as of now, a matter of conjecture. If the circumstance giving rise to the problem were to arise, the first judicial port of call would appear to be the appellate court that is fashioning the remand order.[16]

**15.** In any event, it is not readily apparent that the defendants' constitutional challenge to the appellate regime has substance: Meaningful appellate review in a statutory death penalty scheme plays a "crucial role ... in ensuring that the death penalty is not imposed arbitrarily or irrationally." *Parker v. Dugger*, 498 U.S. 308, 321, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991); *see also Clemons*, 494 U.S. at 749, 110 S.Ct. 1441; *Gregg*, 428 U.S. at 195, 96 S.Ct. 2909. Indeed, notwithstanding that as a general matter appellate review of a trial court's decisions has not, historically, been regarded as a mandatory ingredient of due process, appellate review of a death sentence may be required by the Eighth Amendment. *See Pulley*, 465 U.S. at 45, 104 S.Ct. 871 (reading the *Gregg* plurality opinion as "suggest[ing] that some form of meaningful appellate review is required."); *Cooper*, 91 F.Supp.2d. at 99. To be "meaningful," appellate review must possess certain features. It must be prompt, *see Jurek v. State of Texas*, 428 U.S. 262, 276, 96 S.Ct. 2950, 49 L.Ed.2d 929; it must encompass "consider[ation of] the defendant's actual record," *Parker*, 498 U.S. at 321, 111 S.Ct. 731; and it may entail review of procedural matters such as jury selection, *see Gray v. Mississippi*, 481 U.S. 648, 665–66, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987). Furthermore, the Supreme Court has noted with approval those sentencing schemes that mandate appellate review of every death sentence without requiring a defendant to take procedural steps to secure such review—i.e., "automatic" appellate review. *Gregg*, 428 U.S. at 198, 96 S.Ct. 2909. However, the Court has never expressly held automatic appellate review to be constitutionally required. *See Cooper*, 91 F.Supp.2d. at 99; *Davis*, 904 F.Supp. at 558. Compliance with time limitations may impose certain constraints on a defendant seeking appellate review of a death sentence, but those constraints are not, as a general matter, so onerous as to render the review meaningless.

**16.** It should not pass without notice that § 3595(c)(2) is disjunctive; the statute provides an appellate court with the option to "remand the case for reconsideration under section 3593 *or* imposition of a sentence other than death." § 3595(c)(2) (emphasis added). The former option may be employed where the reasons for reversal are such that a new sentencing hearing would not pose a double jeopardy problem—e.g., where reversal is ordered because evidence for the prosecution was improperly admitted, or evidence for the defense was improperly excluded, thus constituting "legal error requiring reversal" under § 3595(c)(2)(C). On the other hand, the option of imposing a sentence other than death is available to the appellate court where reversal is undertaken because of legal insufficiency of the evidence—a situation which would implicate the double jeopardy clause, *see Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). The latter option would thus allow the appellate court to avoid the unconstitutional situation identified in *Bullington v. Missouri*, 451 U.S. 430, 432, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981) (holding that once death penalty was rejected by jury after prosecution failed to carry burden of proof at original sentencing hearing, and defendant was granted new trial because of constitutional error at first trial, second sentencing hearing would violate Double Jeopardy Clause).

The defendants' argument therefore falls to the imperative that "an act of Congress ought

**IX. "The FDPA violates the Fifth Amendment since it does not require the government to obtain an indictment which charges a capital offense."**

▉▉ Under the FDPA, the sentencer's determinations as to mental state and aggravating factors—prerequisites to the imposition of the death penalty—are made pursuant to a separate sentencing hearing. Therefore, these ingredients need not be featured in the indictment. The defendants argue that this removes from the provenance of the grand jury an essential element of capital prosecutions.

▉▉ The Fifth Amendment guarantees that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V; *see also* Fed.R.Crim.P. 7(a) ("An offense which may be punished by death shall be prosecuted by indictment."). The sufficiency of an indictment is measured by two criteria, to wit: "first, whether the indictment contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, secondly, in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) (citations and internal quotation marks omitted).

▉▉ With regard to sentencing, the Indictment Clause does not make similar demands on the government. An indictment "need not set forth factors relevant only to the sentencing of an offender found guilty of the charged crime." *Almenda-*

*rez–Torres v. United States,* 523 U.S. 224, 228, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). The relevant distinction, therefore, is whether a statute sets forth elements of a crime or sentencing factors. *See id.,* 523 U.S. at 226, 118 S.Ct. 1219. A statutory provision does not recite elements of a crime if it "neither alters the maximum penalty for [a] crime committed nor creates a separate offense calling for a separate penalty," but rather "operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it." *McMillan v. Pennsylvania,* 477 U.S. 79, 88–89, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *see also Almendarez–Torres,* 523 U.S. at 228, 118 S.Ct. 1219. As the FDPA clearly serves the latter purpose, neither the mental state factors nor the aggravating factors which the government would seek to prove at sentencing need be set forth in the indictment.

Accordingly, the FDPA does not violate the Indictment Clause of the Fifth Amendment. *See Minerd,* 176 F.Supp.2d. at 443; *Spivey,* 958 F.Supp. at 1527–28; *McVeigh,* 940 F.Supp. at 1581–82; *Nguyen,* 928 F.Supp. at 1545.

**X. "The death penalty is under all circumstances cruel and unusual punishment; therefore, the government should be precluded from seeking the executions of Mr. Llera Plaza, Mr. Martinez Acosta, and Mr. Rodriguez."**

The Supreme Court has precluded any argument that the death penalty, in all circumstances, constitutes cruel and un-

not to be construed to violate the Constitution if any other possible construction remains available." *Rust v. Sullivan,* 500 U.S. 173, 190, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) (citations omitted); *see also Cooper,* 91

F.Supp.2d. at 100; *Davis,* 904 F.Supp. at 563; *cf. Edelin,* 134 F.Supp.2d. at 71 (upholding the constitutionality of the analogous remand provision of the Anti–Drug Abuse Act, 21 U.S.C. § 848(q)(3)).

usual punishment in violation of the Eighth Amendment. *See McCleskey v. Kemp,* 481 U.S. 279, 300–03, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *Roberts,* 428 U.S. at 331, 96 S.Ct. 3001; *Gregg,* 428 U.S. at 168–187, 96 S.Ct. 2909.

## Conclusion

For the aforementioned reasons, the defendants' joint Motion To Preclude a Penalty Phase Hearing and/or Imposition of the Death Penalty because the 1994 Federal Death Penalty Act is Unconstitutional will be denied. An appropriate order accompanies this opinion.