UNITED STATES of America

v.

Len DAVIS, et al.

No. 94–381.

United States District Court,
E.D. Louisiana.

Oct. 23, 1995.

Milton Paul Masinter, Metairie, LA, John T. Mulvehill, Federal Public Defender, New Orleans, LA, Curklin Atkins, Curklin Atkins, PLC, New Orleans, LA, for Len Davis.

Daniel J. Markey, Jr., New Orleans, LA, Patrick C. McGinity, New Orleans, LA, Bruce Wayne Harris, New Orleans, LA, for Paul Hardy.

Henry Philip Julien, Jr., Julien & Julien, New Orleans, LA, for Damon Causey.

Joseph Vincent Di Rosa, Jr., New Orleans, LA, for Richard Reeves.

Jack M. Weiss, Mark Benjamin Holton, Stone, Pigman, Walther, Wittman & Hutchinson, LLP, New Orleans, LA, for Times–Picayune Publishing Corporation.

Constantine D. Georges, U.S. Attorney's Office, New Orleans, LA, Suzanne Drouet,

U.S. Department of Justice, Criminal Civil Rights Division, Washington, DC, for U.S.

### ORDER & REASONS

BERRIGAN, District Judge.

■ Defendants DAVIS and HARDY have lodged objections to the constitutionality of the federal death penalty procedures, as enacted by Congress in 1994. 18 U.S.C § 3591, et seq.[1] All motions are considered to have been filed by both defendants. For the reasons stated below, the defense motions are DENIED.[2]

*Failure to Narrow the Class Eligible for the Death Penalty*

The defendants contend the federal death penalty provisions are unconstitutional because they fail to sufficiently narrow the class of persons eligible for capital punishment.

■ Since death is qualitatively different from any other penalty in criminal law, the United States Supreme Court has required that the sentencer's discretion be directed and limited to avoid arbitrary, capricious and therefore unconstitutional decisions. *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The capital sentencing process "must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant v. Stephens,* 462 U.S. 862, 875, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983); *Lowenfield v. Phelps,* 484 U.S. 231, 243, 108 S.Ct. 546, 554, 98 L.Ed.2d 568 (1988). This narrowing can be done by either limiting the definition of capital crimes or by broadly defining capital crimes but requiring additional aggravating factors at the penalty phase to justify a death sentence. *Lowenfield v. Phelps,* 484 U.S. at 245, 108 S.Ct. at 555.

■ Furthermore, an aggravating circumstance may not be so generic that it could apply to all murders and it may not be so vague that it provides inadequate guidance to the sentencer. *Tuilaepa v. California,* —— U.S. ——, ——, 114 S.Ct. 2630, 2634, 129 L.Ed.2d 750 (1994); *Arave v. Creech,* 507 U.S. 436, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993); *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988).

The defendants maintain that neither the substantive offenses charged nor the aggravating factors designated by 18 U.S.C. § 3591(a)(2) and § 3592(c) sufficiently narrow the scope of offenders eligible for the death penalty to be constitutional.

■ Looking first to the substantive offenses, 18 U.S.C. § 241 and § 242 on their face appear to narrow the eligible classes as capital punishment is available *only* when the offender's acts result in a death or if the offender's acts include various named other crimes. Under 18 U.S.C. § 1512(a)(1)(C), capital punishment is available only if the offender kills the person and does so "with malice aforethought," a definition which includes felony/murder. 18 U.S.C § 1512(a)(2)(A) and 18 USC § 1111; *United States v. Flores,* 63 F.3d 1342 (5th Cir.1995).

■ The defendants argue that these statutory definitions do not "genuinely narrow" the class of persons eligible for the death penalty under current jurisprudence. Capital punishment may not be imposed upon an offender who did not himself commit the killing and had no intention of committing or causing it to happen, unless he was a major

---

1. By HARDY, Motion to Dismiss Government's Notice of Intent to Seek the Death Penalty; Motion to Declare the Capital Punishment Procedures of the Violent Crime Control and Law Enforcement Act of 1994 Unconstitutional; Second Motion of Paul Hardy to Declare Unconstitutional the Death Penalty Provisions of Violent Crime Control and Law Enforcement Act of 1994; by DAVIS, Motion and Incorporated Memorandum to Bar the Death Penalty because 18 U.S.C. Section 3591, et seq. are Unconstitutional on their Face and as Applied.

2. One defense argument is that 18 U.S.C. § 3592(c)(12) would be unconstitutional if applied to allow the use of a conviction for a separate felony offense as an aggravating factor when the conviction occurs after the alleged homicide but before trial on the homicide. Since that factual scenario does not currently exist in this case, that portion of the motion is DENIED as moot.

participant in the crime who acted with reckless indifference to human life. *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). Consequently, the class of persons eligible for the death penalty under the offenses charged here is arguably even broader than that which has been held constitutional under current caselaw and therefore the statutes do not genuinely narrow the eligible pool.

The defendants make the same argument with regard to 18 U.S.C. § 3591(a)(2)(A–D). That provision sets forth various categories of "intent" that the jury must find in order to consider the offender death penalty eligible. These categories appear to be drawn from *Enmund/Tison. United States v. Flores*, 63 F.3d 1342 (5th Cir.1995). The defendants contend that they do not "genuinely narrow" the category of death-eligible offenders since they constitute the minimum level of culpability necessary for the death penalty scheme to be constitutional.

■ Similar arguments were raised by the defendants in *United States v. Flores*, 63 F.3d 1342 (5th Cir.1995). While the court in that case did not deal with the substantive offenses charged here, the court did discuss the four categories of *Enmund/Tison* intent which virtually duplicate § 3591(a)(2)(A)–(D) and raise the same issues. The 5th Circuit concluded that even though the *Enmund/Tison* findings were required in every capital case, they still constituted "aggravators" because they narrowed those murderers who were death eligible from the larger class of murderers in general. Under the rationale of *Flores*, § 3591(a)(2)(A)–(D) likewise "narrows" the eligible class even though the (A)–(D) factors are constitutionally required in all capital cases. That being true, then § 241, § 242 and § 1512(a)(1) and (2) likewise "narrow" the eligible class even though below the threshold required by *Enmund/Tison*.

The defendants also challenge the constitutionality of two additional aggravating factors cited by the government and alleged in this case:

**Pecuniary gain.**—The defendant committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value. 18 U.S.C. § 3592(c)(8);

**Substantial planning and premeditation.**—The defendant committed the offense after substantial planning and premeditation to cause the death of a person or commit an act of terrorism. 18 U.S.C. § 3592(c)(9).[3]

■ The defendants argue that the factors are vague and overly broad. The Court finds nothing vague or overly broad about a murder-for-hire which is in essence what § 3592(c)(8) describes. As for "substantial planning and premeditation," the 5th Circuit has recently found that the terms are "sufficiently definite and objective to pass constitutional muster." *United States v. Flores*, supra. If further clarification is needed, the defendants can suggest a jury instruction.

*Improper Grant of Authority to the Prosecutor to Define Nonstatutory Aggravating Factors*

Under 18 U.S.C. § 3592, the government may present evidence of nonstatutory aggravating factors which it contends justify imposition of the death penalty. The defendants maintain that this discretion is an improper delegation of legislative authority to the executive branch. U.S. Const. art. 1, § 1; *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Several other federal courts have dealt with this issue and found that the statute does not delegate legislative power. *United States v. Pitera*, 795 F.Supp. 546 (E.D.N.Y.1992); *United States v. Bradley*, 880 F.Supp. 271 (M.D.Pa. 1994). Part of the rationale is that it is the statutory aggravating factors, which are defined by Congress and *not* delegated, that set the mandatory minimum requirements for the jury to consider the death penalty. If the jury finds the requisite number of statutory aggravating factors to apply, then the jury can consider the death penalty. If not, they cannot. Whether the government intro-

---

**3.** The defendants also challenge 18 U.S.C. § 3592(c)(6), "Heinous, cruel or depraved manner of committing offense." However, that has not been alleged in this case so the issue is moot.

duces any other aggravating evidence is irrelevant. Therefore, the nonstatutory aggravating factors are simply a means to provide the jury with *additional* information about the defendant, just as a defendant is free to provide with regard to information in mitigation. In that sense, the government (and the defense) are engaging in "advocacy, not legislation." *United States v. Pitera,* 795 F.Supp. 546, 560 (E.D.N.Y.1992); *United States v. Bradley,* 880 F.Supp. 271 (M.D.Pa. 1994).

■ The defendants, however, raise an additional concern which makes the analysis less simple. In *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), the United States Supreme Court upheld a death sentence even though one of the aggravating factors found by the jury to apply was held by the court to be unconstitutionally vague. Significant to the decision was that the state statute at issue used aggravating factors *only* to narrow the class eligible for the death penalty. The jury was *not* additionally instructed to weigh aggravating factors against mitigating factors. The federal statute at issue here likewise uses the statutory aggravating factors as the threshold to find an offender death eligible. However, the federal procedure also calls on the jury to consider any nonstatutory aggravating factors and mitigating factors and ultimately decide whether the aggravating factors "sufficiently outweigh" the mitigating factors to justify a death sentence. 18 U.S.C. § 3593(e). Thus, while the statutory factors provide the threshold for death penalty consideration, they ultimately become indistinguishable from nonstatutory factors in the final weighing by the jury. In the same pot with the carefully crafted factors enunciated by Congress go the potential hodge-podge of other factors drawn up by the individual government prosecutors. Since this is a weighing statute and since nonstatutory and statutory aggravating factors are to be equally considered in that balancing, this Court does conclude that allowing the prosecutors to designate additional factors is in fact a delegation of legislative authority. See also *United States v. Pretlow,* 779 F.Supp. 758 (D.N.J.1991).

■ Delegation of legislative power is not per se improper. Congress can legislate in broad terms, leaving discretion to other branches in implementation, as long as Congress sets out an "intelligible principle" to guide that discretion. *J.W. Hampton, Jr. & Co. v. United States,* 276 U.S. 394, 410, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928); *Touby v. United States,* 500 U.S. 160, 111 S.Ct. 1752, 114 L.Ed.2d 219 (1991). This statute does set forth intelligible principles for that purpose. The statutory list of aggravating and mitigating factors focus on circumstances of the crime and the character of the offender, including his past criminal history, his capacity and relative culpability in the offense. Proposed nonstatutory aggravating factors should be consistent with the type and severity of the statutory factors. The requirement of pretrial notice to the defendant and judicial review of the relevancy, reliability and constitutionality of proposed nonstatutory factors provide additional checks on the prosecutor's discretion. *United States v. Pretlow,* 779 F.Supp. at 766–767. The delegation of authority is therefore proper.

### Lack of Uniform Procedures for Prosecuting Capital Cases

■ The defendants challenge the manner in which the government decides to seek a death sentence. They argue that because the government does not have a plan or specific standards for selecting capital defendants, the penalty will be imposed in an arbitrary and capricious manner. The result in the present case, they argue, is that they are being selectively prosecuted and that race is a factor in the decision to seek the death penalty. Through an evidentiary hearing and the subpoena process, they seek to shift the burden to the government to demonstrate that the death penalty is *not* being used in an unconstitutional, racially biased manner. They do not cite any caselaw which directly supports this argument.

The defendants have presented a general challenge to prosecutorial discretion in the application of the death penalty. The Supreme Court, however, has stated that "the capacity of prosecutorial discretion to provide individualized justice is 'firmly entrenched in

American law.'" *McCleskey v. Kemp*, 481 U.S. 279, 310, 107 S.Ct. 1756, 1777, 95 L.Ed.2d 262 (1987). Thus, a general challenge to the ability of the government to decide to pursue capital punishment against certain defendants must fail.

■■■■■ To show that prosecutors have abused their discretion in this case, *i.e.* that they have been selectively prosecuted, the defendants must demonstrate that they have been "singled out for prosecution" *and* that the government did so based upon an "unjustifiable standard such as race, religion, or other arbitrary classification." *United States v. Diggs*, 613 F.2d 988, 1003 (D.C.Cir.1979). Because of the importance of prosecutorial discretion, the Supreme Court requires "exceptionally clear proof before ... infer[ring] that the discretion has been abused." *McCleskey*, 481 U.S. at 297, 107 S.Ct. at 1770. In order to obtain an evidentiary hearing, a defendant's motion must "allege[ ] sufficient facts ... to take the question past the frivolous state and raise[ ] a reasonable doubt as to the prosecutor's purpose." *United States v. Jacob*, 781 F.2d 643, 647 (8th Cir.1986).

■■■■■ The defendants argue that they were singled out for prosecution because the federal government did not prosecute another New Orleans police officer, Antoinette Frank, and her accomplice, Rogers Lacaze, for the murder of another officer, Ronald Williams, and two civilians. The defendants do not address the issue of whether the state's prosecution of Frank and Lacaze justifies the federal government's failure to prosecute them. They also fail to address the factual differences between the cases. The court can take judicial notice of the fact that New Orleans police officers responded to and investigated the Frank–Lacaze murders. The record in this case indicates that the federal government learned of the defendants' alleged involvement in the murder of Kim Marie Groves through its investigation into defendant DAVIS' alleged drug activity.

■■■■■ Even if the defendants could show that they have been singled out for prosecution, they have not presented any evidence showing that the government has done so for improper reasons. They seek to rely on statistics indicating racial discrepancies in the imposition of the death penalty. In *McCleskey, supra*, the Supreme Court rejected the use of such statistics as a means of demonstrating improper prosecution or sentencing in a particular case: "We hold that the ... study is clearly insufficient to support an inference that any of the decision-makers in McCleskey's case acted with discriminatory purpose." 481 U.S. at 297, 107 S.Ct. at 1770. Thus, the defendants have failed to allege sufficient facts to warrant any further inquiry into the government's decision to seek the death penalty against them.

*Consideration of "Information" Not Otherwise Permitted by the Federal Rules of Evidence*

18 U.S.C. § 3593(c) provides for the admission of "information" regarding aggravating and mitigating factors at the penalty phase. That information is admissible:

> ... regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.

The defendants claim this standard lessens the reliability of the proof offered and creates an "evidentiary free-for-all" at the penalty phase, denying the defendants due process.

■■■■■ If this Court construed 18 U.S.C. § 3593(c) as permitting the jury to consider unreliable information in the penalty phase, the Court would agree that the statute is unconstitutional. Courts are, however, constrained to interpret legislation in ways that support its constitutionality. *Screws v. United States*, 325 U.S. 91, 95, 65 S.Ct. 1031, 1032, 89 L.Ed. 1495 (1945). This can be readily accomplished with this statute.

As an initial observation, the sentencing phase of any criminal trial is qualitatively different from the guilt phase. Separate from the issue of reliability, some types of evidence that are clearly inadmissible under the Federal Rules of Evidence at the guilt

phase are not only admissible but very relevant to the sentencing. As a major example, Fed.R.Evid. 404(b) precludes at the guilt phase any evidence of other crimes, wrongs, or acts to prove the character of the offender. See also Fed.R.Evid. 608 and 609. This type of evidence, however, is entirely appropriate to consider in sentencing, in both capital and noncapital cases. *United States v. Pitera,* 795 F.Supp. 546 (E.D.N.Y.1992).

 At the same time, the Court agrees that "death is different in kind from any other punishment imposed under our system of criminal justice." *Gregg v. Georgia,* 428 U.S. 153, 187, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976). The Court also agrees that *heightened* reliability is required in a capital sentencing hearing because the consequences of the jury's decision are so serious and so final. *Ford v. Wainwright,* 477 U.S. 399, 410, 106 S.Ct. 2595, 2602, 91 L.Ed.2d 335 (1986); *United States v. Pitera,* 795 F.Supp. 546 (E.D.N.Y.1992).

 This statute provides for that enhanced standard. The most compelling reason why the Court considers 18 U.S.C. § 3593(c) to require *heightened* as opposed to lessened reliability, is that the statute declares information inadmissible if its probative value is outweighed by the danger of unfair prejudice. Under the Federal Rules of Evidence, *all* relevant evidence is generally admissible even if its relevancy is marginal. Fed.R.Evid. 401 & 402. The major exception is when the probative value of the evidence is "substantially" outweighed by the danger of unfair prejudice. Fed.R.Evid. 403. In contrast to that "imbalance" in favor of admissibility under the Federal Rules is the significantly different standard under § 3593(c)—information proffered for the penalty phase of a death case is to be rejected if its probative value is outweighed—not *substantially* outweighed, but simply outweighed—by its unfair prejudice. Unlike under the Federal Rules, admission of information is not presumed and inadmissibility is more readily determined. Furthermore, reliability is obviously a lynchpin in determining whether the proffered information has probative value at all, and is likewise a lynchpin in determining whether its probative value is or

is not outweighed by the danger of unfair prejudice. Many of the individual rules of the Federal Rules of Evidence were specifically enacted to enhance the reliability of admitted evidence. While the Court is not bound by the strict mandates of the rules in a capital sentencing hearing, certainly the policies underlying the different provisions affecting reliability are factors to consider in deciding whether proposed information for the penalty phase is reliable enough to bring before a jury. Similarly, evidence that *would* be admissible under the Federal Rules of Evidence, may well *not* be admissible under the heightened scrutiny of the penalty phase.

> This court expects that in many circumstances reference to the Federal Rules of Evidence will be useful in deciding whether information proffered at a capital sentencing hearing is sufficiently reliable to be more probative than prejudicial. The Rules will not, however, be determinative. For example, they tolerate multiple layers of hearsay, without requiring judicial inquiry into reliability. See Fed.R.Evid. 805. The heightened standard applicable to capital sentencing proceedings may, however, demand further indicia of reliability before a court can say that the probative value of any such hearsay outweighs its prejudicial potential.

> *United States v. Pitera,* 795 F.Supp. 546, 565 (E.D.N.Y.1992); see also *United States v. Pretlow,* 779 F.Supp. 758, 770 (D.N.J. 1991).

As a final note, the Court is cognizant that sentencing in a capital case is not done by a judge who is presumably seasoned in separating and weighing different kinds of information. It is done by a jury, novices in sentencing considerations, yet carrying the most serious of consequences.

> ... accurate sentencing information is an indispensable prerequisite to a reasoned determination of whether a defendant shall live or die by a jury of people who may never before have made a sentencing decision.

\* \* \* \* \* \*

Since the members of the jury will have had little, if any, previous experience in sentencing, they are unlikely to be skilled in dealing with the information they are given.

*Gregg v. Georgia*, 428 U.S. at 190–191, 96 S.Ct. at 2933–2934.

For the above stated reasons, 18 U.S.C. § 3593(c) is constitutional.

## The Statute Does Not Provide for Adequate Legal Representation

The defendants maintain that Congress has denied indigent defendants a fair chance to defend themselves under 18 U.S.C. § 3005, as amended in 1994, as compared to the so-called Drug Kingpin Act of 1988, 21 U.S.C. § 848(q)(4)(A).

How these two statutes will interact in the future, and whether one supplants the other, remain to be seen. Reasonable interpretations include that (1) 21 U.S.C. § 848(q)(4)(A) continues to be viable and applies to all capitally charged defendants; (2) § 3005's promise of a "full defense by counsel" encompasses all the specifics itemized in 21 U.S.C. § 848(q)(4)(A); and (3) these two statutes, as well as others affecting indigent defense, continue to apply to all persons charged with capital offenses.

Additionally, it is more appropriate to compare the amended 18 U.S.C. § 3005 to its own predecessor statute, rather than to other statutes not directly implicated by the amendment. Section § 3005 as amended in 1994 actually expanded the defense available to those capitally charged. For example, the prior version provided that the court could appoint one or two attorneys to a capitally charged defendant; the amended version requires that two counsel be appointed; the amended version requires that one of the attorneys be "learned in the law applicable to capital cases" whereas the prior statute only required that counsel be "learned in the law"; finally, the amended statute requires the court to consider recommendations from the local Federal Public Defender office in assigning counsel or, in the absence thereof, the Administrative Office of the United States Courts.

■ Nothing in the legislative history of the amendment indicates any intent to limit any of the resources available to an indigent charged with a capital crime. On the contrary, 18 U.S.C. § 3005 still requires that a charged defendant be allowed to have a "full defense" by counsel and shall further be permitted "in his defense to make any proof that he can produce by lawful witnesses." This necessarily includes resources for investigators, expert or other services reasonably necessary to carry out that representation.

## The Statute Fails to Provide Meaningful Appellate Review

The defendants argue that 18 U.S.C. § 3595 sharply curtails the appellate review available in capital cases. The only specific complaints they have are that (1) § 3595(c)(2) may violate double jeopardy and (2) the statute does not mandate automatic appellate review but rather requires a timely filing of a notice of appeal.

18 U.S.C. § 3595(c)(2) reads in pertinent part as follows:

Whenever the court of appeals finds that—

(A) the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;

(B) the admissible evidence and information adduced does not support the special finding of the existence of the required aggravating factor; or

(C) the proceedings involved any other legal error requiring reversal of the sentence that was properly preserved for appeal under the rules of criminal procedure,

The court shall remand the case for reconsideration under section 3593 or imposition of a sentence other than death.

The defendants complain that a remand for a new hearing would violate double jeopardy in instances under (B) when the evidence adduced at the penalty phase did not support the necessary aggravating factor.

■ The statute does not make clear, even using the disjunctive "or," in which situation under (A)–(C) a new hearing is appropriate and in which situation a sentence less than death is the remedy. The defendants are correct in that in the situation

envisioned in (B) double jeopardy would in fact be violated if the appellate court elected to remand for a new hearing rather than remand for a sentence other than death. This court however is obliged to interpret the statute, admittedly unartfully drawn, in a manner that upholds its constitutionality. The statute does not compel an appellate court to violate double jeopardy and it will not be assumed that an appellate court would do so either.

▇▇▇ The second complaint is that the statute does not mandate automatic appellate review, but conditions it on a timely notice of a hearing. The defendants raise the hypothetical of an incompetent lawyer failing to timely file a notice. While the United States Supreme Court has certainly favored capital procedures that call for automatic appellate review, *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), such has not been held to be constitutionally required.

The federal procedure for review of a sentence of death is exhaustive—the "entire record" is subject to review, 18 U.S.C. § 3595(b); the appellate court "shall address all substantive and procedural issues raised on the appeal," 18 U.S.C. § 3595(c). As noted already above, the court reviews the sentence for the influence of "passion, prejudice, or any other arbitrary factor"; whether the evidence supports the finding of the required aggravating factor; and whether "any other legal error" occurred requiring reversal of the sentence. 18 U.S.C. § 3595(c).

The United States Supreme Court does require meaningful appellate review as an essential factor in protecting against arbitrary and capricious imposition of the death penalty. *Parker v. Dugger*, 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991); *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). Considering the breadth of review available under § 3595, this court will not assume that an appellate court would foreclose that review on the basis of an overly technical adherence to a notice of appeal requirement.

4. Both defendants are black. They cite the influence of being raised in an atmosphere of urban

*The Statute Prohibits Consideration of Race, Color, Religious Beliefs, National Origin or Sex as Mitigating Factors*

The defendants challenge 18 U.S.C. § 3593(f) as precluding the defendant from raising various personal characteristics as mitigating factors against the death penalty [4].

18 U.S.C. § 3593(f) provides in part:

... the court ... shall instruct the jury that, in considering whether a sentence of death is justified, it shall not consider the race, color, religious beliefs, national origin, or sex of the defendant or of any victim and that the jury is not to recommend a sentence of death unless it has concluded that it would recommend a sentence of death for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant of any victim may be.

▇▇▇ Contrary to the stated fear of the defendants, this statute does not preclude the use of those factors in mitigation. It is clear the statute's intent is to prevent prejudice and bigotry from influencing the jury's findings. It is not intended to eliminate legitimate mitigating factors such as those that can be drawn from a culturally difficult or deprived background. Furthermore, the statute specifically states that the jury is to reject those personal characteristics only in considering whether *death* is justified. The jury is not instructed to disregard those factors in favoring life instead of death.

If further clarification is needed, the defendants can suggest an appropriate jury instruction.

*The Death Penalty is Cruel and Unusual Punishment*

▇▇▇ Finally, the defendants argue that capital punishment violates the Eighth Amendment as cruel and unusual punishment. The Eighth Amendment draws its boundaries from "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). According to the United States Supreme

violence and pervasive racism as possible mitigation.

Court, those standards have not evolved to the point where the death penalty is per se unconstitutional. *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).