**UNITED STATES of America,**

v.

**Brian Patrick REGAN, Defendant.**

**No. CR.A. 01–405–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 25, 2002.

---

Patricia M. Haynes, Asst. U.S. Atty., U.S. Atty's Office, Alexandria, VA, for Plaintiff.

James Clyde Clark, Land, Clark, Carroll & Mendelson, Alexandria, VA, Nina J. Ginsberg, Di/Muro, Ginsberg & Mook, Alexandria, VA, Joseph John McCarthy, Delaney, McCarthy & Colton, Alexandria, VA, Jonathan Shapiro, Alexandria, VA, for Defendant.

## MEMORANDUM OPINION

LEE, District Judge.

THIS MATTER is before the Court on Defendant's Omnibus Motions Concerning the Federal Death Penalty Act of 1994, 18 U.S.C. § 3591 *et seq.*

Defendant's Omnibus Death Penalty Motions brief raises a litany of arguments attacking the Federal Death Penalty Act and the Government's Notice of Intent to Seek the Death Penalty in this capital attempted-espionage case. Defendant contends that the Government's notice of intent to seek the death penalty in this case and the Government's various statutory and non-statutory aggravating factors violate established Eighth Amendment principles. Upon review of Defendant's 109–page brief and the Government's opposition thereto, the Court concludes that many of Defendant's arguments rehash arguments previously made before and rejected by many courts on these issues. While Defendant's arguments regarding the application of *Ring v. Arizona,* —— U.S. ——, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), to the Federal Death Penalty Act reflected some novelty, Defendant's *Ring* motion was denied in a separate memoran-

dum opinion. The Court notes for the record that the accused's right to effective assistance of counsel includes reassertion of certain of these arguments in order to make a complete record. Therefore, the instant Memorandum Opinion addresses Defendant's particular arguments that the Federal Death Penalty Act is unconstitutional and that the Government's notice of intent to seek the death penalty is insufficient. The Court rejects all of Defendant's previously discredited arguments and adopts the reasoning of the cases cited herein to the extent the case law is not inconsistent with the Court's ruling herein.

## I. BACKGROUND

### A. Charges against the Defendant

On August 24, 2001, Defendant was charged in a criminal complaint with attempted espionage against the United States of America in violation of 18 U.S.C. § 794. Defendant was subsequently indicted on the charge on October 23, 2001. The charges against Defendant in the original indictment alleged that Defendant abused his position in the intelligence community by attempting to sell top secret information to Iraq, Libya, and the People's Republic of China.

Defendant served in the United States Air Force ("USAF") from August 1980 until August 31, 2000, retiring at the rank of Master Sergeant. During his tenure with the USAF, Defendant specialized in signals intelligence analysis. Specifically, from 1991 to 1994, Defendant worked at the Air Force Intelligence Support Group at the Pentagon targeting the communications systems of military adversaries of the United States and later as an Air Defense Analyst.

From July 1995 until August 31, 2000, Defendant was detailed to the headquarters of the National Reconnaissance Office ("NRO"). The NRO is responsible for building and operating the United States reconnaissance satellites. Defendant was assigned to the Signals Intelligence Applications Integration Office of the NRO, which is responsible for focusing signals intelligence support for tactically deployed military units. After leaving the USAF in August 2000, TRW Incorporated ("TRW") hired Defendant as a contract employee to the NRO. In July 2001, Defendant began his TRW assignment at the NRO.

The original indictment alleged that, beginning in mid-1999, Defendant accessed Intelink, while at the NRO, to obtain classified intelligence information relating to the military preparedness of Iran, Iraq, Libya, and China. Intelink is the United States Intelligence Community's classified version of the Internet, and it can be accessed only by persons with the appropriate security clearance. The indictment alleges that, in August 2001, Defendant again accessed Intelink and viewed classified information relating to military facilities in Iraq, Iran, Libya, and China, as well as classified documents relating to current United States intelligence collection capabilities against those nations. Defendant was subsequently arrested at Dulles International Airport on August 23, 2001, allegedly en route to Europe. Defendant was apprehended in possession of the addresses of the Chinese embassies in Bern, Switzerland, and Vienna, Austria, as well as the Iraqi embassy in Vienna and the Iraqi Interests Section in Paris, France.

On February 14, 2002, the Government filed a four-count superseding indictment against Defendant alleging three counts of Attempted Espionage under 18 U.S.C. § 794(a). The three counts charge Defendant with Attempted Espionage with the intent to injure the United States and advantage Iraq (Count One), Libya (Count Two), and China (Count Three). The fourth count charges Defendant with Gath-

ering National Defense Information in violation of 18 U.S.C. § 793. Notably, the superseding indictment refers to the discovery of letters on Defendant's computer allegedly drafted by Defendant to high-ranking government officials of Iraq and Libya, including the countries' respective leaders, Saddam Hussein and Muammar Qadhafi. These letters offered to sell top secret information to Iraq and Libya, including information involving United States aircraft flying in the No–Fly Zone over Northern Iraq.

## B. The Death Penalty Notice

On April 19, 2002, pursuant to the Federal Death Penalty Act, 18 U.S.C. §§ 3591–3598 ("FDPA"), the Government filed a notice of intent to seek the death penalty in this case. The notice alleges two statutory aggravating factors and twenty-four non-statutory aggravating factors to justify the death penalty for Count One, Attempted Espionage with the intent to injure the United States and advantage Iraq, and for Count Two, Attempted Espionage with the intent to injure the United States and advantage Libya. The two statutory aggravating factors set forth in the notice are (1) that "[i]n the commission of the offense the defendant knowingly created a grave risk of substantial danger to the national security," and (2) that "[i]n the commission of the offense the defendant knowingly created a grave risk of death to another person." 18 U.S.C. § 3592(b)(2)-(3). In light of the Supreme Court's decision in *Ring*, — U.S. —, 122 S.Ct. 2428, 153 L.Ed.2d 556, the Government filed another superseding indictment on July 24, 2002, re-alleging Counts One through Four and including the two statutory factors set forth in the death penalty notice.

Defendant filed several motions seeking to strike the death penalty provisions of the superseding indictment and attacking the constitutionality of the FDPA on its face and as applied. This order discusses the facial and as-applied challenges to the statute raised in the motion captioned "Omnibus Motions Concerning the Federal Death Penalty Act of 1994, 18 U.S.C. § 3591 et seq. and the Government's Notice of Intent to Seek a Sentence of Death."

## II. DISCUSSION

### A. The Federal Death Penalty Act is Constitutional

Defendant's motion to dismiss the indictment because the Federal Death Penalty Act is unconstitutional is denied. The FDPA scheme is comprehensible and allows the jury to make a reasoned and informed choice between death and a life sentence. *United States v. Llera Plaza*, 179 F.Supp.2d 444, 449–50 (E.D.Pa.2001). *See also Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) (noting that the "crucial assumption underlying the system of trial by jury is that juries will follow the instructions given them by the trial judge") (quoting *Parker v. Randolph*, 442 U.S. 62, 73, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979)); *United States v. Kee*, 2000 WL 863119 (S.D.N.Y. 2000); *United States v. Frank*, 8 F.Supp.2d 253 (S.D.N.Y.1998).

The studies cited by Defendant "do not establish that the concepts of aggravating and mitigating factors as used in the FDPA bear such a degree of intrinsic 'incomprehensibility' as to render them incapable of clarification through adequate jury instructions." *Llera Plaza*, 179 F.Supp.2d at 450 n. 5 (analyzing the same studies cited by Defendant Regan); *see also Kee*, 2000 WL 863119, *3 (noting that jury studies cited by the defendants were "not sufficient to call into question the body of modern death penalty jurisprudence"). *See generally United States v. Bradley*, 880 F.Supp. 271, 276–77 (M.D.Pa.

1994) (holding that statistical evidence showing that 78% of defendants charged under the FDPA statute for murders within the course of a continuing criminal enterprise were African–Americans, while only 16.7% of all defendants charged with violating continuing criminal enterprise statute were African–Americans, was insufficient to establish that the FDPA was being applied in a racially discriminatory manner in violation of the Eighth Amendment and the Equal Protection Clause); *cf. McCleskey v. Kemp,* 481 U.S. 279, 297, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (holding that a statistical study indicating that the death penalty in Georgia is more frequently imposed on black defendants was insufficient to support the inference that any of the decision makers in the case of a black defendant sentenced to death acted with a discriminatory purpose). The only case that supports Defendant's position that empirical studies demonstrating juror confusion may be relied on by district court judges was overruled by the Seventh Circuit. *See Free v. Peters,* 12 F.3d 700, 705 (7th Cir.1993).

Defendant's argument that allowing the Government to "play with prose" in defining non-statutory aggravating factors violates the Eighth Amendment has been previously rejected. *See United States v. Nguyen,* 928 F.Supp. 1525, 1538 (D.Kan. 1996).

■ Defendant lacks standing at this time to challenge the appellate review provisions of the FDPA. *Llera Plaza,* 179 F.Supp.2d at 461. Furthermore, the FDPA provides meaningful and constitutionally sufficient appellate review. *United States v. Cooper,* 91 F.Supp.2d 90, 99 (D.D.C.2000); *United States v. Cuff,* 38 F.Supp.2d 282, 285–86 (S.D.N.Y.1999); *Frank,* 8 F.Supp.2d at 270–73; *United States v. McVeigh,* 944 F.Supp. 1478, 1484–85 (D.Colo.1996); *Nguyen,* 928 F.Supp. at

1548; *United States v. Davis,* 904 F.Supp. 554, 562–63 (E.D.La.1995).

The FDPA adequately narrows the class of defendants eligible for the death penalty. *United States v. Webster,* 162 F.3d 308, (5th Cir.1998); *United States v. Flores,* 63 F.3d 1342 (5th Cir.1995); *Llera Plaza,* 179 F.Supp.2d at 451; *United States v. Minerd,* 176 F.Supp.2d 424 (W.D.Pa.2001); *Cooper,* 91 F.Supp.2d 90; *United States v. DesAnges,* 921 F.Supp. 349 (W.D.Va.1996); *Davis,* 904 F.Supp. 554;.

The FDPA's appellate review provisions do not violate the Equal Protection Clause. *Cooper,* 91 F.Supp.2d at 99; *Cuff,* 38 F.Supp.2d at 285–86; *Frank,* 8 F.Supp.2d at 270–73; *McVeigh,* 944 F.Supp. at 1484–85; *Nguyen,* 928 F.Supp. at 1548; *Davis,* 904 F.Supp. at 562–63.

Defendant's contentions raised in sections III.E & F of his motion have been previously addressed by this Court in its September 18, 2002, Memorandum Opinion, *United States v. Regan,* 221 F.Supp.2d 672 (E.D.Va. 2002).

The FDPA does not violate the Eighth Amendment prohibition of cruel of unusual punishment. *Gregg v. Georgia,* 428 U.S. 153, 168–87, 183, 177–78, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (holding that the death penalty is not per se cruel and unusual punishment); *See McCleskey,* 481 U.S. at 300–03, 107 S.Ct. 1756; *United States v. Jones,* 132 F.3d 232, 242 (5th Cir.1998) *aff'd,* 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999); *Llera Plaza,* 179 F.Supp.2d at 464.

**B. The Statutory Aggravating Factors of "Grave Risk to National Security" and "Grave Risk of Death" Are Not Overbroad or Vague**

■ Defendant's motion to dismiss the indictment under grounds that the Govern-

ment's asserted statutory and non-statutory aggravating factors are overbroad or vague is denied. A statutory aggravating factor may not be overbroad, and it may not be vague. *Tuilaepa v. California*, 512 U.S. 967, 972–73, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). The only constitutional function of an aggravating factor is to "genuinely narrow the class of persons eligible for the death penalty." *Zant v. Stephens*, 462 U.S. 862, 877, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).

The sentencing authority's discretion must be suitably directed and limited to each aggravating factor that is utilized by the scheme. In defining each aggravating factor, the death penalty statute must provide the sentencing authority with " 'clear and objective standards' that provide 'specific and detailed guidance' " to the sentencing authority in the exercise of its discretion. *Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).

Even if the statute did not adequately define an aggravating factor, its deficient legislative definition could be saved from being deemed unconstitutional if the state's courts applied a sufficiently limiting construction to the factor. *Id.* at 422, 100 S.Ct. 1759. A factor may be unconstitutionally vague in one case but not unconstitutionally vague in all cases. *Id.*

### 1. Grave Risk of Substantial Danger to the National Security

■ The FDPA allows the jury to consider that the defendant "knowingly created a grave risk of substantial danger to the national security." 18 U.S.C. § 3592(b)(2). Using the standard for evaluating aggravating factors for vagueness from *Tuilaepa*, this Court must determine whether the factor has a common sense core of meaning that the jury could understand. 512 U.S. at 973–75, 114 S.Ct. 2630. "Grave risk," "substantial danger," and

"national security" are terms phrased in conventional and understandable terms in today's society; they are based on today's terminology and other judicial definitions. The reasonable juror would have the ability to comprehend these terms and apply them reasonably when contemplating the aggravating factor.

In the *Tuilaepa* Court's view, "substantial danger" is one of those everyday words having a common sense core meaning that jurors will be able to understand. 512 at 973–75. "Grave risk" has a common sense core meaning. *McVeigh*, 944 F Supp. at 1490. The Supreme Court in *Gorin v. United States*, 312 U.S. 19, 28, 61 S.Ct. 429, 85 L.Ed. 488 (1941), held that the term "national defense" is "a generic concept of broad connotations," referring to military and naval establishments and the related activities of national preparedness. The court went on to say that the language is sufficiently definite for the public to understand prohibited activities in this area. *Id.*

The Fourth Circuit has found a factor valid by compounding the factual allegations of the case and the pertinent Supreme Court precedent. *United States v. Barnette*, 211 F.3d 803, 819–20 (4th Cir. 2000) (citing *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) and *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976)). Hence, this Court takes the same "compounding" approach as the Fourth Circuit and finds that the "grave risk of national security" factor is not unconstitutionally vague.

### 2. Grave Risk of Death

In *Barnette*, the Fourth Circuit, relying on *Gregg*, acknowledged that this aggravating factor is unconstitutionally vague unless the court can narrowly instruct the jury with regard to how this factor applies to the facts of a specific case. 211 F.3d at

819–20. The *Barnette* Court held that the first individual at whom the defendant pointed his shotgun was clearly, by any definition, at grave risk of being killed. The Court further explained that the individual who was standing next to the person who was actually shot and killed was also in harm's way because even a small error in the defendant's aim could have wounded or killed the second individual. The Fourth Circuit relied heavily on the reasoning of *United States v. Walker*, 910 F.Supp. 837 (N.D.N.Y.1995), and *McVeigh*, 944 F.Supp. 1478.

In *Walker*, the court held that the aggravating factor in 18 U.S.C. § 3592(c)(5) could be upheld because the defendant had threatened, at gunpoint, bystanders to a homicide. In *McVeigh*, the district court clarified the meaning of "grave risk of death" in the jury instructions: "a significant and considerable possibility" and placing other persons in a "zone of danger." 944 F.Supp. at 1490–91.

Contrary to *McVeigh* and *Walker*, the facts of this case do not reveal how the Government will show that Defendant created a grave risk of death to anyone. In this case, the Government alleges that the other person placed at a grave risk of death is an unnamed and unidentified United States or allied pilot who may, in the future, patrol the No Fly Zone over Iraq. The Court notes that it appears that no pilot has ever been shot down over the No–Fly Zone since 1991. It is unclear how the Government would clearly prove that Defendant created "a grave risk of death to another person;" however, there is no constitutional requirement that the existence of an aggravating factor be determined prior to the start of trial. *Slaughter v. Parker*, 187 F.Supp.2d 755, 790 (W.D.Ky.2001); *see also Frank*, 8 F.Supp.2d at 279. Furthermore, the FDPA scheme provides the jury with the authority to determine whether the gov-ernment has proven each aggravating factor it alleges.

## C. Congress's Provision for the Presentation of Non-statutory Aggravating Factors is Constitutional

The use of non-statutory aggravating factors does not lead to wholly arbitrary and capricious death sentences. *Barclay v. Florida*, 463 U.S. 939, 966–67, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983); *Llera Plaza*, 179 F.Supp.2d at 453–54. Congress's decision to permit the use of non-statutory aggravating factors did not amount to an unconstitutional delegation of legislative power. *Mistretta v. United States*, 488 U.S. 361, 390, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989); *United States v. Allen*, 247 F.3d 741, 759 (8th Cir.2001); *Jones*, 132 F.3d at 240; *Llera Plaza*, 179 F.Supp.2d at 454–55. Permitting the Department of Justice to define non-statutory aggravating factors after the crime but before trial does not violate the ban on ex post facto laws. *Llera Plaza*, 179 F.Supp.2d at 455–56; *McVeigh*, 944 F.Supp. at 1486.

The FDPA does not contain any statutory inconsistencies that would prohibit the use of non-statutory aggravating factors. *Llera Plaza*, 179 F.Supp.2d at 457–59; *see Beck v. Prupis*, 529 U.S. 494, 506, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000). Proportionality review is not a constitutionally mandated "ingredient of an appellate regime." *Llera Plaza*, 179 F.Supp.2d at 456. *See Pulley v. Harris*, 465 U.S. 37, 50–51, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).

*1. Defendant is Not Entitled to a Hearing to Determine the Consistency of the Government's Non-statutory Aggravating Factors*

 The Court denies Defendant's request for a hearing to determine the consistency of the Government's non-statutory aggravating factors. Because the intent of

non-statutory factors is to individualize sentencing based upon the character of the individual and the circumstances of the case, courts have found that "the FDPA has sufficient safeguards" to ensure that the death penalty is not administered in an arbitrary manner. *Allen*, 247 F.3d at 760. Therefore, even if there are inconsistencies, they are irrelevant as long as the non-statutory factors are valid. When non-statutory aggravating factors are not presented in a duplicative, vague, overbroad, or irrelevant manner, they will pass constitutional muster. *Jones v. United States*, 527 U.S. 373, 402, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999); *Arave v. Creech*, 507 U.S. 463, 474, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993); *Barclay*, 463 U.S. at 966–67, 103 S.Ct. 3418; *Zant*, 462 U.S. at 878, 103 S.Ct. 2733; *United States v. McCullah*, 76 F.3d 1087, 1111 (10th Cir.1996).

The court in *McVeigh* reasoned that although "Congress did not impose policy limitations or give clear guidance to prosecuting attorneys as to what may be included as non-statutory aggravating factors, the sentencing hearing is governed by the court within the adversary process." 944 F.Supp. at 1486. The court controls the scope of the sentencing hearing, and the "guiding principle[ ] for judicial determination of the validity of particular non-statutory aggravations is the death penalty jurisprudence developed by the Supreme Court." *Id.* For these reasons, courts have rejected claims like, "allowing the government to define non-statutory aggravating circumstances violates the Eighth Amendment because it will result in arbitrary and capricious sentencing." *Nguyen*, 928 F.Supp. at 1538.

Furthermore, Congress's intent when drafting the FDPA was to provide prosecuting attorneys the ability to "frame and craft additional aggravating factors that might warrant the death penalty." 140 Cong. Rec. H2340 (April 14, 1994). Congress could not think of "every possible contingency or for every possible type of case where the death penalty is warranted." *Id.* at H2339. Representative McCollum said that allowing the prosecutor to add aggravating factors would "leave the discretion in the hands of the prosecutors to look on each death penalty case on a case-by-case basis." *Id.* The prosecutor should "craft an appropriate aggravating factor or two" in addition to the statutory aggravating factors already applicable. *Id.*

### 2. Non-statutory Aggravating Factors Do Not Impermissibly Duplicate Elements of the Offense

The non-statutory aggravating factors do not impermissibly duplicate elements of the offense. *Jones*, 527 U.S. at 398, 119 S.Ct. 2090; *Lowenfield v. Phelps*, 484 U.S. 231, 244–46, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); *Jones*, 132 F.3d at 249; *United States v. Bin Laden*, 126 F.Supp.2d 290, 301–04 (S.D.N.Y.2001).

### 3. Non-statutory Aggravating Factors Duplicate Some of the Statutory Aggravating Factors

Relying on the Supreme Court's ruling in *Stringer v. Black*, 503 U.S. 222, 230–32, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), the Tenth Circuit ruled that when one aggravating factor "necessarily subsumes" another, "[s]uch double counting of aggravating factors, especially under a weighing scheme, has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally." *McCullah*, 76 F.3d at 1111, *reh'g denied en banc*, 87 F.3d 1136 (10th Cir.), *cert. denied*, 520 U.S. 1213, 117 S.Ct. 1699, 137 L.Ed.2d 825; *accord*, *Webster*, 162 F.3d 308.

The Fourth Circuit follows the *McCullah* court's reasoning as to cumulative findings of multiple overlapping aggravating factors. The Fourth Circuit held that "a

submission [of multiple overlapping aggravating factors] ... that permits and results in cumulative findings of more than one of the ... circumstances as an aggravating factor is constitutional error." *United States v. Tipton*, 90 F.3d 861, 899 (4th Cir.1996). Several other Circuits and District Courts have ruled that duplicitous aggravators lead to arbitrary and capricious results in death penalty cases. *See Allen*, 247 F.3d at 789–90 ("aggravating factors that duplicate each other can impermissibly skew a jury in favor of imposing a death sentence"); *United States v. Johnson*, 136 F.Supp.2d 553, 559 (W.D.Va. 2001) ("The jury may take into account ... information [that] necessarily duplicates elements of the underlying offense, *so long as that factor is not duplicative of another aggravating factor.*") (emphasis added); *Bin Laden*, 126 F.Supp.2d at 299 ("an aggravating factor that is necessarily and wholly subsumed by a different aggravator ... is invalid per se").

The Fourth, Fifth, and Tenth Circuits have ruled that an aggravating factor "necessarily subsumes" another factor when the factors in question substantially overlap, or the factor's elements necessarily include elements of another factor. *Jones*, 132 F.3d at 250; *McCullah*, 76 F.3d at 1111. *See Tipton*, 90 F.3d at 899; *Bin Laden*, 126 F.Supp.2d at 299.

a. *Aggravator 1 ("The nature and breadth and sensitivity of the classified information which the defendant sought to compromise") and Aggravator 21 ("The defendant attempted to compromise information above the Top Secret level") are not duplicative*

■ Aggravators 1 and 21 are not duplicative because the elements in the Government's assertion that Defendant "attempted to compromise information above the Top Secret level" (Aggravator 21) do not necessarily include the elements the Gov-

ernment must prove concerning "the nature and breadth and sensitivity of the classified information which the defendant sought to compromise." (Aggravator 1). Aggravator 1 addresses the scope of the classified information breach—Defendant may have sought to compromise more than Top Secret information. Aggravator 21 addresses a specific type of information that Defendant sought to disclose. The two factors are not duplicative.

b. *Aggravator 4 ("An Air Force sergeant/retiree placing Air Force pilots at grave risk of death") and Aggravator 22 ("The defendant had the benefits and privileges of a full Air Force career and a substantial retirement salary") are not duplicative*

■ Aggravators 4 and 22 are not duplicative because the factual elements of Defendant's benefits and privileges of an Air Force career (Aggravator 22) are not identical to the elements of a retired Air Force Master Sergeant engaging in espionage that jeopardized fellow Air Force members (Aggravator 4). Aggravator 22 addresses Defendant's willingness to commit this offense despite his privileges of a military retirement; this factor speaks to Defendant's aggravating conduct. Aggravator 4 addresses the unique circumstances that, although Regan is a comrade of the Air Force pilots, he chose to endanger those comrades; this Aggravator shows Defendant's tendency to engage in criminal behavior.

c. *Aggravator 15 ("The defendant removed 800 pages of classified material from United States Government facilities") and Aggravator 16 ("Other evidence indicating that the defendant moved many other documents out of NRO") are duplicative*

■ Aggravators 15 and 16 are duplicative because each element the Government

must prove to show Defendant removed 800 pages of classified material from United States Government facilities (Aggravator 15) "necessarily subsumes" the elements required to show that Defendant removed many other documents out of NRO (Aggravator 16). The documents that the Government intends to show should be under the same category "documents that the Government intends to present showing Defendant moved classified material from NRO." Conceivably, the Government could offer 800 different non-statutory aggravating factors for each different document. The elements in Aggravator 16 include the elements of Aggravator 15; therefore, Aggravators 15 and 16 are duplicative, and the Court strikes these Aggravators.

> d. *Aggravator 7 ("The countries in question are true adversaries of the United States") and Aggravator 17 ("The United States is involved in active hostilities with Iraq") are not duplicative*

■ Aggravators 7 and 17 are not duplicative because the elements that the Government must use to show the United States is involved in active hostilities with Iraq (Aggravator 17) and how Iraq, Lybia, and China are true adversaries of the United States (Aggravator 7) are different and do not necessarily subsume each other. *E.g.,* Govt.'s Omnibus Opp'n 62 ("Iraq is not only a true adversary of the United States, but is also actively engaged in hostilities with us, shooting at our planes and trying to kill our pilots.").

## D. Defendant's Specific Motion to Strike Each of the Government's Non–Statutory Aggravating Factors

> 1. *The Non–Statutory Factors Are Not Vague*

■ In *Tuilaepa,* the Supreme Court ruled that "a vague propositional factor used in the sentencing decision creates an unacceptable risk of randomness, the mark of the arbitrary and capricious sentencing process prohibited by *Furman.*" 512 U.S. at 974–75, 114 S.Ct. 2630.

> a. *Non–Statutory Aggravator 4 ("An Air Force sergeant/retiree placing Air Force pilots at grave risk of death")*

This factor has a "common-sense core of meaning" that a jury will be able to understand, and this Aggravator individualizes Defendant's circumstances.

> b. *Non–Statutory Aggravator 23(a) ("Future Dangerousness")*

This factor has a "common-sense core meaning" and the Court will not strike this Aggravator.

> c. *Non–Statutory Aggravator 24 ("Victim Impact")*

This aggravating factor has a core meaning that a sentencing jury will be able to understand. Threats to national security are not obtuse principles, and the potential victims are clear. Furthermore, this aggravating factor is an element of the offense, and duplication of aggravating factors that duplicate elements of the offense is constitutional.

> 2. *The Non-statutory Factors Are Not Overbroad Nor Do They Fail to Narrow*

"The purpose of a statutory aggravating circumstance is to enable the sentencer to distinguish those who deserve capital punishment from those who do not." *Arave,* 507 U.S. at 474, 113 S.Ct. 1534. The Supreme Court ruled that an aggravating factor can be overbroad if the sentencing jury "fairly could conclude that an aggravating circumstance applies to *every* defendant eligible for the death penalty." *Id.* If

an aggravating factor directs the sentencer to the individualized circumstances of Defendant's case, then that aggravating factor will not "fall within the Eighth Amendment's proscription against overbroad factors." *Jones*, 527 U.S. at 401, 119 S.Ct. 2090. Therefore, individual analysis of each aggravating factor that Defendant moves to strike is not necessary. If the Government's non-statutory aggravating factors are "used to direct the jury to the individual circumstances of the case," then those non-statutory aggravating factors are not overbroad.

Defendant argues that non-statutory aggravators 1, 3, 5, 7, 12, 13, 15, 19, 22, 23(d) and 24 are overbroad, or fail to narrow the class of persons eligible for the death penalty (i.e., the Government's aggravators fail to separate Defendant's alleged offense from others convicted of attempted espionage such that the jury would be incapable of determining whether this crime is so egregious that it warrants the death penalty as compared to other espionage cases). The narrowing function has been performed by the statutory aggravating factors in the FDPA, and the non-statutory factors only serve to characterize the defendant and individualize the defendant's sentence. The aggravators, therefore, are not overbroad, and Defendant's argument is without merit.

### 3. The Non-statutory Factors Are Not Irrelevant

"The Constitution does not prohibit consideration at the sentencing phase of information not directly related to either statutory aggravating or statutory mitigating factors, as long as that information is relevant to the character of the defendant or the circumstances of the crime." *Barclay*, 463 U.S. at 967, 103 S.Ct. 3418; *Zant*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235; *Gregg*, 428 U.S. at 164, 196–97, 206, 96 S.Ct. 2909. "What is important at the selection stage is an *individualized* deter-

mination on the basis of the character of the individual and the circumstances of the crime." *Zant*, 462 U.S. at 879–80, 103 S.Ct. 2733.

#### a. Non-statutory Aggravators 6, 8, 9, 10, 11, 13, 19, 20, 21, and 22.

These factors address Defendant's conduct as calculating and intentional; and, regardless of his knowledge of his actions, they show that Defendant was willing to go forward with his actions. These are circumstances that should be presented to the sentencing jury. These factors are relevant to Defendant's character and are an individualized determination of Defendant's alleged culpability.

#### b. Non-statutory factor 16 ("Other evidence indicating that the defendant moved many other documents out of NRO")

The Government contends that it "plans to introduce evidence" from which the jury may reasonably infer that Defendant moved other documents (aside from the 800 pages asserted earlier) out of the NRO. Should the Government not introduce this evidence during the guilt phase, it is not inappropriate for this information to be allowed in the sentencing phase because this information is relevant to determining the scope of Defendant's attempted espionage.

#### 4. "Future Dangerousness" is Not Vague or in Violation of Due Process

Vagueness analysis reveals "that the factors have some 'common-sense core of meaning ... that [sentencing] juries should be capable of understanding.'" *Tuilaepa*, 512 U.S. at 977, 114 S.Ct. 2630. The risk of "future dangerousness" based upon the Defendant's background, prior conduct, and propensity towards anti-social

behavior is a reality that has a core meaning that a jury can understand. Aggravating factor 24 "Future Dangerousness" is not vague.

In *Simmons v. South Carolina,* the Court held that a jury must be informed that there is no possibility of parole if future dangerousness is presented as an aggravating factor. 512 U.S. 154, 178, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). The Due Process Clause restricts the Government's "continuing danger" non-statutory factor to "continuing danger while in prison:" "[E]ven though a life sentence without the possibility of parole greatly reduces the future danger to society from that particular defendant, there is still a chance that the defendant might escape from prison or receive a pardon or commutation of sentence." *Allen,* 247 F.3d at 788. The Government must present the possibility articulated by the *Allen* Court and the small likelihood that Defendant will have access to classified information, or otherwise be a threat to the United States.

Defendant is not entitled to the Government's theory of this case because Defendant may present many mitigating factors to counter the Government's aggravating factors. Due Process is not offended; therefore, Defendant's request for an outline of the Government's theory on future dangerousness is denied.

### E. The Government's Notice Sets Forth the Aggravating Factors with Sufficient Specificity

■ Defendant is not entitled to a bill of particulars, nor is he entitled to a pretrial evidentiary hearing on the sufficiency of the aggravating factors or the admissibility of the evidence supporting the factors. "A defendant's right to notice of the charges against which he must defend is well established." *Gray v. Netherland,* 518 U.S. 152, 167–68, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996). "But a defendant's

claim that he has a right to notice of the *evidence* that the state plans to use to prove the charges stands on quite a different footing." *Id.* at 168, 116 S.Ct. 2074. *See Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady,*" which addressed only exculpatory evidence, "did not create one."); *Wardius v. Oregon,* 412 U.S. 470, 474, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973) ("[T]he Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded."). "To put it mildly, these cases do not compel a court to order the prosecutor to disclose his evidence; their import, in fact, is strongly against the validity of petitioner's [notice of evidence] claim." *Gray,* 518 U.S. at 168, 116 S.Ct. 2074. *See supra* Part II.C.1.

### III. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that with the exception of the deletion necessary to avoid invalid duplication in the aggravating factors, Defendant Regan's omnibus motions concerning the Federal Death Penalty Act of 1994 are DENIED.

The Clerk is directed to forward a copy of this Order to counsel.